Vincent KOOPMAN, Plaintiff–Appellant,

v.

WATER DISTRICT NO. 1 OF JOHNSON COUNTY, KANSAS, R.L. Chandler, Ralph G. Wyss and Roger Fairbanks, Defendants–Appellees.

No. 91–3165.

United States Court of Appeals, Tenth Circuit.

Aug. 10, 1992.

Stephen J. Dennis of Niewald, Waldeck & Brown, Overland Park, Kan., for plaintiff-appellant.

Wilson E. Speer and Daniel M. Zimmerman of Speer, Austin, Holliday & Ruddick, Olathe, Kan., for defendants-appellees.

Before BALDOCK and BARRETT, Circuit Judges, and PARKER, District Judge.*

PARKER, District Judge.

Appellant Vincent Koopman appeals the district court's March 27, 1992 Memorandum and Order granting defendants' motion for summary judgment on all three of appellant's wrongful discharge claims,

---

* Honorable James A. Parker, District Judge, United States District Court for the District of New Mexico, sitting by designation.

thereby dismissing the case. Appellant sued appellees for wrongful discharge from his position as "Utility Man II" with Water District No. 1 of Johnson County. On appeal, appellant contends (1) under a pendent state law tort theory, that he was discharged from his employment in retaliation for his anticipated workman's compensation claim and (2) that this discharge was in violation of his Fourteenth Amendment due process rights.[1] We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in part and reverse in part.

## BACKGROUND

Appellant began working for the Water District on October 13, 1982. Before appellant was hired, at the Water District's request a Dr. Owens performed a medical examination which indicated appellant was healthy. Dr. Owens interpreted an x-ray of appellant's back to be normal. The Water District then employed appellant as a "Utility Man II" which entailed two basic responsibilities: 1) clean up crew work which involved landscaping, sodding, yard repair and street repair; and 2) tapping which involved installation and inspection of new house and business service lines. In performing the tapping aspect of the job, appellant had to physically move concrete meter pits which required heavy lifting, bending over, and using his arms above shoulder level.

In 1986, appellant complained to his foreperson, Ralph Taylor, and the assistant foreperson, Kenny Moore, that he believed lifting the meter pits by himself was unsafe. Because of appellant's abnormally high absenteeism, the Water District, in late 1986, ordered appellant to undergo drug testing and to submit to a medical examination. Dr. Carolyn Parsons, a physician chosen by the Water District, examined appellant on October 27, 1986, and concluded that appellant had a congenital developmental abnormality of his spine (spondylolysis at L–5 bilaterally) which put him at high risk of injury if he were to continue performing the heavy work.[2] Dr. Parsons advised appellant that he should not lift anything over 25 pounds, and that he should not do any work requiring repetitive bending or stooping or the use of his arms above shoulder level.

By letter dated November 5, 1986 to the Water District, Dr. Parsons reported the results of her examination stating that appellant had chronic back problems resulting from a motor vehicle accident in December 1984. Her report mentioned the x-ray evidence of the congenital developmental defect, spondylolysis. Dr. Parsons' report did not say, or even imply, that appellant had told Dr. Parsons appellant believed he had injured his back at work. Dr. Parsons submitted a second report, dated November 21, 1986, to the Water District which warned that a "company which allows Mr. Koopman to do heavy lifting, etc. is putting him at high risk of injury, and is putting itself at high risk of liability."

On November 24, 1991, the Water District delivered to appellant a letter dated November 21, 1986 written by appellee Chandler, then general manager of the Water District, which informed appellant that his employment would be terminated as of November 26, 1986.[3] In response, appellant sent a letter dated November 28, 1986

1. At oral arguments held on May 12, 1992, appellant withdrew his third claim, that he was terminated in violation of his First Amendment rights. Thus, the district court's decision to grant summary judgment in favor of the appellees on appellant's First Amendment claim is not contested on appeal.

2. Plaintiff seems to question the veracity of this diagnosis: "Strangely, this 'congenital/developmental abnormality' in plaintiff's spine was not detected in plaintiff's pre-employment medical examination, which was given by another doctor who was also selected by the Water District."

Plaintiff's Brief–in–Chief at 3–4. Plaintiff did not, however, come forward with any medical evidence contradicting Dr. Parson's report.

3. The appellees are Water District No. 1 of Johnson County, Kansas ("Water District"), a quasi-municipal corporation and a political subdivision of the State of Kansas; R.L. Chandler, the general manager for appellee Water District; Ralph G. Wyss, director of operations for appellee Water District; Roger Fairbanks, director of distribution for Water District. The individual appellees were sued in their individual and official capacities.

to appellee Chandler expressing appellant's shock at the decision to terminate him and requesting "a chance to meet with you or the Board of Directors in person to review your decision." Thereafter, on December 9, appellant met with appellee Chandler and Byron Johnson, who at the time was director of personnel safety and training. Appellant was told there were no vacant positions for workers with his physical limitations, i.e., the limitations on work activity imposed by Dr. Parsons. Appellant stated that he disagreed with the assertion that he had physical limitations and said that he would seek an examination by a second doctor.[4] Later, in a January 26, 1987 letter to the Water District Board, appellant formally requested "that the Board of Water District No. 1 review the decision of R.L. Chandler terminating my employment effective November 26, 1986." This request resulted in Byron Johnson, then Water District personnel director, Ron Gullickson, a Water District board member, and Jim Meitl, the new Water District general manager, discussing appellant's case via telephone and reaffirming the termination decision.[5]

In a letter dated February 10, 1987, Johnson advised appellant that his termination had been reaffirmed. In July of 1987, plaintiff gave notice of a claim for workers' compensation.

### DISCUSSION

■ In considering a district court's order granting a motion for summary judgment, an appellate court is required to review the case *de novo.  Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c);  *see Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

### 1. Appellant's Pendent State Law Claim—Retaliatory Discharge

■ In support of his claim for retaliatory discharge, appellant relies on two cases which modified the Kansas employment-at-will doctrine. In *Murphy v. Topeka—Shawnee County of Labor Service*, 6 Kan.App.2d 488, 630 P.2d 186 (1981), the Kansas Court of Appeals held that a cause of action lies when an employer discharges an employee-at-will in retaliation for filing a workers' compensation claim. More recently, in *Chrisman v. Philips Industries, Inc.*, 242 Kan. 772, 751 P.2d 140 (1988), the Kansas Supreme Court extended the ruling in *Murphy* to cover a situation where an employer discharges an employee in anticipation of the employee filing a workers' compensation claim, if the employee has expressed an intent to do so. In *Chrisman*, the plaintiff slipped on the job, twisted his back and was hospitalized. The next morning, he called one of his superiors, Yarges, from the hospital and told him that he had slipped on some sheet metal. Yarges asked plaintiff not to file a workers' compensation claim and instead to use his personal insurance. Plaintiff testified that he responded, "If that's what it took to protect my job, fine." Plaintiff did submit a claim to his personal insurance company. The employer terminated the plaintiff two days after he returned to work. On these facts, which were viewed in a light most favorable to the plaintiff, the Supreme Court of Kansas held that summary judgment in favor of the defendant on plaintiff's retaliatory discharge claim was not appropriate. Specifically, *Chrisman* held that a cause of action exists "where the employee claims he or she was injured on the job, the employer knew that the employee intended to file a workers' compen-

---

**4.** Although appellant testified at his deposition, "I think I went to Dr. Snow" after his termination, Aplt.App. at 174, there is nothing in the record before us showing that appellant actually had another medical examination.

**5.** Neither Johnson, Gullickson nor Meitl was named as a defendant in this case.

sation claim, and in retaliation therefor discharged the employee." 751 P.2d at 142.

However, *Chrisman* is not helpful to the appellant in this case because appellant did not tell his supervisors that he injured himself on the job, and there is no evidence that anyone at the Water District knew that he had been injured on the job or that he intended to file a workers' compensation claim. Appellant argues that there is evidence that appellees knew of his back problems—in fact it was stated that his was a "medical termination" based on Dr. Parson's assessment. Aplt.App. at 119. Appellee Chandler testified that he was aware appellant was having back problems since the previous October. Aplt.App. at 102. Johnson stated that he had a nurse make a medical appointment for appellant because appellant was unable to lift. Aplt.App. at 109. Chandler also testified that appellees knew of appellant's absences and appellant's complaints about his back problems. Aplt.App. at 102. The main evidence upon which appellant relies to show that his back problems were work related are the two medical examinations—the one prior to beginning employment in October of 1982 which indicated no back problems and the one conducted by Dr. Parsons just prior to appellant's termination in 1986 which reflected a history of chronic back problems resulting from a 1984 vehicle accident and an abnormal low back x-ray. To support his contention that he was fired in anticipation of filing a workers' compensation claim appellant points to the letter from Dr. Parsons which states that the company would be "subject to liability" if plaintiff were to continue lifting items over 25 pounds, Aplt.App. at 66, and Chandler's testimony that the Water District would be subject to liability if appellant injured his back. Aplt.App. at 105. We are not convinced by these arguments because none of this evidence suggests the appellees knew

that appellant had actually injured his back on the job. To the contrary, Dr. Parsons informed the Water District that appellant injured his back in a 1984 vehicle accident and had a "congenital developmental abnormality," a condition that was not earlier detected.[6]

Moreover, in *Rowland v. Val–Agri, Inc.*, 13 Kan.App.2d 149, 766 P.2d 819 (1988), the Kansas Court of Appeals ruled that an employee, who because of his physical condition was incapable of performing the duties of his job, did not have a cause of action for retaliatory discharge. Appellant argues that the facts in *Rowland* are distinguishable since it was uncontroverted that the plaintiff in *Rowland* could not perform his job duties whereas appellant testified that he was still capable of performing the duties of a Water Utility Man II. However, appellant has presented no evidence to raise a genuine factual issue about Dr. Parsons' medical history, diagnosis and recommendations and there is no evidence that the Water District had any information concerning the cause of appellant's physical condition other than that provided by Dr. Parsons. Even if we were to assume, as appellant argues, that appellees were aware that appellant made complaints about his back problems, there is no evidence which indicates that appellees were put on notice that appellant injured himself on the job or that he intended to file a worker's compensation claim. That is, there is no evidence inconsistent with the information provided by Dr. Parsons as to the source of appellant's back problems.

Appellant's central argument is that a determination of the "state of mind" of the Water District's employees is necessary and thus, summary judgment is inappropriate. Appellant states that in order to determine whether appellees terminated appellant in anticipation of his workers' com-

6. Appellant also relies on *Pilcher v. Board of County Comrs.*, 14 Kan.App.2d 206, 787 P.2d 1204 (1990) which held that an employee may not be terminated for absences due to a work-related injury that might form the basis for a workers' compensation claim in the future. However, as already stated, none of the evidence indicates that appellees had notice of appellant being injured on the job or that appellant was considering filing a workers' compensation claim. Certainly, appellant's extensive absenteeism lead to the Water District arranging for appellant to have a medical examination but the evidence indicates that it was the result of this examination, and not appellant's previous absences, which lead to appellant's discharge.

pensation claim or due to absences caused by work-related injury, it is necessary to determine whether appellees knew about appellant's back problems; whether they thought he could have developed these problems as the result of a work-related injury; and whether appellees' motives for terminating appellant related to either appellant's injury-related absences or appellees' anticipation of appellant's filing of a workers' compensation claim. "Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable [persons] might differ—a function traditionally left to the jury—summary judgment often will be an inappropriate means of resolving an issue of this character." Wright, Miller & Kane, 10 A Federal Practice and Procedure: Civil 2d § 2730 (1983).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.

Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 2513. However, as discussed above, appellant did not come forward with any evidence indicating that he had placed his employer on notice that he had been injured on the job or that he intended to file a workers' compensation claim. Thus, the district court's decision to grant summary judgment on this issue should be affirmed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–324, 106 S.Ct. 2548, 2551–53, 91 L.Ed.2d 265 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. ... One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and

we think it should be interpreted in a way that allows it to accomplish this purpose.").

## 2. Appellant's Due Process Claim

Appellant claims that the appellees deprived him of his procedural due process rights by the manner in which he was discharged. "A public employee facing discharge is entitled to the safeguards of procedural due process only if he can demonstrate that the termination implicates a property or liberty interest protected by the Due Process clause ..." Sipes v. U.S., 744 F.2d 1418, 1420 (10th Cir.1984). In order for employment to be a protected property interest, the employee must have a "legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Whether there is a legitimate claim of entitlement is a question of state law. Conaway v. Smith, 853 F.2d at 793 (10th Cir.1988).

■ Appellant argues that he had a legitimate claim of entitlement to his employment with the Water District because the employment manual as well as the District's actual practice of terminating employees only for "reason" created an implied contract of employment. In Kansas, whether an implied contract exists which creates a property interest in employment normally is a question of fact for the jury. See Allegri v. Providence–St. Margaret Health Center, 9 Kan.App.2d 659, 684 P.2d 1031 (1984); Morriss v. Coleman Company, 241 Kan. 501, 738 P.2d 841 (1987); Brown v. United Methodist Homes for Aged, 249 Kan. 124, 815 P.2d 72 (1991).

■ In Allegri, the Kansas Court of Appeals, in reversing a summary judgment in favor of the defendant on the plaintiff's wrongful discharge claim, stated:

> Where no definite term of employment is expressed, the duration of employment depends on the intention of the parties as determined by circumstances in each particular case. The understanding and intent of the parties is to be ascertained from their written or oral negotiations, the usages of business, the situation and object of the parties, the nature of the

employment, and all the circumstances surrounding the transaction. Intent is normally a question of fact for the jury, and may be shown by acts, circumstances and inferences reasonably deducible therefrom and need not be established by direct proof.

*Allegri,* 684 P.2d at 1035 (cites omitted).

In *Morriss,* the Supreme Court of Kansas relied on *Allegri* and held that the trial court erred in granting the defendants' motion for summary judgment as to the implied contract claim. 738 P.2d at 849. The *Morriss* court noted that *Allegri* is important "because it established clearly the rule that intent of the contracting parties is normally a question of fact for the jury and that the determination of whether there is an implied contract in employment requires a factual inquiry." 738 P.2d at 848. *Morriss* held that there was a genuine issue of material fact as to whether there was an implied contract that the employer would treat its employees fairly and in good faith so that an employee could not be terminated except for just cause. In *Morriss,* the plaintiffs relied on statements in the personnel manuals which informed employees that they would only be discharged for good cause, as well as on verbal and nonverbal conduct of their supervisors and the employer's established policies in dealing with its employees. The court in *Morriss* ruled that a disclaimer in the manual, which stated that nothing in the manual should be construed as an employment contract, did not determine the issue as a matter of law and that instead, the factors laid out in *Allegri* must be considered. "The ultimate decision of whether there was an implied contract not to terminate the plaintiffs without just cause must be determined from all the evidence presented by the parties on that issue." 738 P.2d at 849.

Recently, in *Brown,* a case decided after the summary judgment was granted in this case, the Kansas Supreme Court upheld a denial of summary judgment on facts similar to those in this case. The *Brown* court extensively reviewed the development of the implied-in-fact employment contract law of Kansas and concluded that with rare exceptions, whether an implied-in-fact contract exists is a question of fact for the jury.

A review of the motion for summary judgment ... establishes that questions of fact did exist about the role of the Personnel Policies Manual in giving rise to an express or implied contract of employment. The record must be read in the light most favorable to Brown, who opposed the motion. If this is done, the intent of the parties through the distribution of the Personnel Policies Manual presented a question of fact that needed to be submitted to the jury.

*Brown,* 815 P.2d at 83. The court in *Brown* said that even though the existence of a "written personnel policy alone is not sufficient to establish an implied contract of employment of a term of specific duration," *Id,* not much additional evidence is required to create an issue of fact on the claim. The plaintiff in *Brown* presented, in addition to a written personnel policy, testimony of a supervisor that the philosophy of defendant was "to be fair to the employees." The manual combined with this testimony was enough to place the case before the jury.

In this case, Section X.D of the Water District's Employment Manual provides:

Separation from the Water District's employ is made only with the approval of the Manager and appropriate Division Head. After a fair and impartial review by his Department Head and Management, if an employee feels he has been treated unjustly, he may make a formal written appeal to the Water District Board for review of his case. Aplt.App. at 84.

Plaintiff relies on the following facts to argue that he presented sufficient evidence to establish a protected property interest: the language of the manual, Aplt.App. at 84; Chandler's testimony that plaintiff had a right to have the Board review his termination, Aplt.App. at 104; Johnson's statement that there was always a reason to terminate employees, Aplt.App. at 114; the Report of Resignation and Separation form

provided by defendants in which it was necessary to check a box indicating the reason for termination, Aplt.App. at 119; and plaintiff's belief that a reason was necessary due to observing the experience of other terminated employees for whom a reason was always provided, Aplt.App. at 60. We conclude that appellant has presented sufficient evidence to create a genuine issue of material fact as to whether he could be terminated only for "cause" and therefore had a protected property interest in his employment with the Water District. Based on the Kansas decisions in *Allegri, Morriss,* and *Brown,* whether the employment manual and the words and actions of the appellees created a protected property interest is a question of fact for the jury to decide. Thus, we hold that the district court erred in deciding as a matter of law that no implied contract existed and, for that reason, granting defendants' motion for summary judgment on plaintiff's procedural due process claim.[7]

Accordingly, the Memorandum and Order of the district court is AFFIRMED insofar as it granted summary judgment on appellant's claims of wrongful discharge in violation of appellant's First Amendment rights and wrongful discharge in retaliation for appellant's anticipated workman's compensation and is REVERSED as to the granting of summary judgment on appellant's procedural due process claim. The case is REMANDED for proceedings in accordance with this opinion.

---

7. In reaching the decision that no implied contract of employment existed, the district court touched upon the question of whether plaintiff received all the process that he was due under the employment manual.

> The plaintiff again points to the policy manual, which states that termination decisions could be formally appealed to the Water District Board. He alleges that the telephone "meeting" between Gullickson, Johnson and Meitl was insufficient. The record, however, clearly shows that he made his formal appeal, which was considered by a board member and rejected. Plaintiff produces no evidence to support his implied argument that the entire board had to convene and review his appeal.

District Court's Memorandum and Order, slip op. at 11. However, since the district court concluded that no implied contract had been formed, there was no direct ruling by the district court that plaintiff had been afforded the process called for by the implied contract of employment.