**Joyce ELZA, Plaintiff,**

v.

**KOCH INDUSTRIES, INC., Defendant.**

**No. 96–1351–JTM.**

United States District Court,
D. Kansas.

Aug. 12, 1998.

Marc P. Clements, Stephanie N. Scheck, Morrison & Hecker L.L.P., Wichita, KS, Alan L. Rupe, Husch & Eppenberger, Wichita, KS, for Plaintiff.

Mikel L. Stout, Foulston & Siefkin L.L.P., Wichita, KS, Mark V. Holden, Wade Warthen, Koch Industries, Inc., Wichita, KS, for Defendant.

## *MEMORANDUM ORDER*

MARTEN, District Judge.

Joyce Elza sued Koch Industries, Inc., alleging she was discharged in violation of the Age Discrimination in Employment Act (ADEA), 28 U.S.C. § 621, *et seq.*, and the Kansas Age Discrimination in Employment Act, (KADEA), K.S.A. 44–1111, *et seq.* Elza also brought related state express and implied contract and tort claims against Koch. Koch moves for summary judgment on all claims.

In response, plaintiff abandoned her express contract claim and her tort claims. Accordingly, Koch is granted summary judgment on those claims. Koch's motion is de-

nied in all other respects for the reasons that follow.

## I. Summary Judgment Standard.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to show that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the initial showing has been made, the burden shifts to the non-moving party to designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. A party may not rely on the allegations of its pleadings but must establish the existence of a genuine issue of material fact through admissible evidence. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied,* 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). When determining whether there is a material issue of fact, the nonmoving party's evidence is to be believed; all justifiable inferences are to be drawn in its favor; and its nonconclusory version of any disputed issue of fact is assumed to be correct. *Multistate Legal Studies, Inc. v. Harcourt Brace Publ., Inc.,* 63 F.3d 1540, 1545 (10th Cir. 1995), *cert. denied,* 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996).

## II. Facts.

The following factual scenario is based on the relevant factual allegations of the parties, where undisputed or supported by appropriate citations to admissible evidence and with all reasonable inferences drawn in Elza's favor.[1]

---

**1.** Koch suggests that most of its factual assertions should be deemed true and a substantial portion of Elza's response should be stricken because her response fails to comply with Local Rule 56.1. The court does not agree with this characterization of Elza's response. Koch also argues that it suffers prejudice as it was unable

to respond to Elza's "counter statements." One purpose of Elza's response is to make her own factual assertions, including those which tend to show a factual dispute exists as to an assertion made by Koch. While Elza may have organized her response differently, and presumably more to Koch's liking, the court does not agree that Koch

Elza was born on September 4, 1946. In June 1973, Koch hired Elza as a clerk in the company's mail room. In 1974, Elza became a senior mail clerk. In 1979 she was promoted to the mail room supervisor position.

In 1987, Elza was counseled regarding how she managed her subordinates. In 1991, several complaints arose about the management of the mail room: (1) lack of a clear chain of command; (2) unwillingness to accept complaints and provide feedback; and (3) lack of defined responsibilities for senior clerks. On June 13, 1994, Elza received a formal written reprimand after a mail bag was stolen because a mail room employee failed to follow proper procedures. A May 15, 1995 evaluation of Elza by her supervisor Ray Rys expressed concern about: (1) her ability to engage in critical and independent thinking; (2) her knowledge of technology, MBM, and economic principles; (3) her confidence; (4) her initiative; (5) her ability to work with her peers; (6) her ability to establish long-term goals; and (7) her communications skills. However, the evaluation concluded:

> While there are many performance and developmental areas in which improvement is needed, [Elza] has continued to manage the organization in a relatively efficient and cost-effective manner for which a 2.0% increase would be warranted.

Based on Rys's evaluation, Ray Keith, Rys's supervisor, expressed to Lynn Markel, his supervisor, concern about whether Elza should continue in a supervisory role or be discharged. Markel counseled against termination and suggested Elza should be given some well-defined improvement projects and relieved of her supervisory responsibilities. However, Keith and Markel approved Elza's merit increase and she continued in her role as a supervisor. The payroll change form indicated Elza's date of birth. There is no evidence Keith counseled either Rys or Elza regarding Elza's performance. Elza was never assigned any improvement projects.

Also on May 15, 1995, a former Koch employee filed a formal complaint alleging Elza had sexually harassed her. The former employee and Koch had been informally negotiating for some time. Elza learned of the complaint and retained her present counsel to represent her in the sexual harassment case. Elza, through counsel, advised Koch that she might pursue a defamation claim against the former employee.

In June 1995, Rys was replaced by Theodore Albright as Elza's supervisor. Shortly afterward Rys was terminated. The record is unclear as to whether Albright assumed all of Rys's other responsibilities. At some point, Elza was relieved of her supervisory responsibilities during the investigation of the employee's allegations of harassment. Elza testified she was not told she was being relieved of her supervisory responsibilities for performance-related reasons. Albright assumed Elza's supervisory responsibilities. Albright is significantly younger than Rys and Elza. Elza was later moved into a technical consultant position.[2] Koch began to seriously consider outsourcing the mail room, but ultimately decided not to do so. Elza stated in her affidavit that she was performing satisfactory work when she was relieved of her supervisory duties.

Elza testified that Albright told her that if she would get out and act like a 19– or 20– year old instead of sitting in her office, things would probably go smoother. She testified that more than once, Albright told her that there were people in the mail room who were older and could be replaced for less money than what they were being paid. Elza further testified that on one occasion, Albright told her she was in the age bracket where it would be harder for Koch to let her go than it would be for Koch to terminate a younger employee.

In December 1995, a settlement agreement was reached between Koch and the former employee in which the former employee agreed not to discuss the case and not to

suffered prejudice. Koch was allowed to file a reply brief.

**2.** The record is inconsistent regarding exactly when Elza's job responsibilities changed and when her job title changed. Neither party relies on the precise dates as legally significant and the court finds it unnecessary to establish precise dates.

make any disparaging remarks about Elza and acknowledged that she may have misinterpreted Elza's actions. In exchange for the former employee's promises, Elza released any defamation or similar cause of action against the former employee.

Elza, through counsel, requested a letter detailing her employment history with Koch and indicating she was an excellent choice for future employment. Koch refused, but provided Elza with a letter indicating that no evidence had been found to substantiate the sexual harassment charges.

Koch decided not to outsource the mail room and decided to transfer Albright to Koch Chemical. Albright told Elza she would resume her supervisory responsibilities at least on an interim basis. However, on February 1, 1996, during a meeting with Albright, Ray Keith, Albright's supervisor, told Elza there was no place for her in the mail room. An employee older than Elza assumed some of her non-supervisory responsibilities on an interim basis and Albright continued to perform Elza's supervisory responsibilities. Koch placed an advertisement for a mail room manager and Craig Highfill was hired to fill the position. Albright was transferred. Highfill is younger than Elza. Highfill eventually assumed some of Albright's non-mail room responsibilities as well. Elza was kept on Koch's payroll for several months with no responsibilities, then discharged.

Keith was involved in the discharge of three supervisors over forty years of age within a two-year time frame—Rys, Elza and another supervisor.[3] Rys and Elza were replaced with younger employees. The record does not indicate the age of the replacement for the third supervisor. Some of Koch's internal employee forms and lists indicate the employees' dates of birth.

Elza did not have a written contract of employment with Koch. She was free to leave her job at any time. Elza testified that she had no intention of leaving her employment when she was terminated and planned to work at Koch until she retired.

Elza testified that at company meetings her superiors told the employees that as long as they followed Koch's mission, philosophies and principles, their jobs would be secure and they would be treated with integrity. If a problem arose, employees would be given warnings and worked with by the supervisors before termination would be considered. Elza could not recall which of her supervisors made the statements.

Koch uses a management philosophy called Market–Based Management (MBM). Elza testified that at MBM training meetings, the instructors told her and other employees that as long as she followed Koch's mission, philosophy and principles as given to her by Bill Hanna and Charles Koch, she would have job security and would not be terminated. Elza could not specifically recall which instructors told her this, but did recall that Lynn Markel, an executive vice-president, was an instructor. Markel's deposition testimony, when read in the light most favorable to Elza, is consistent with Koch having a policy of normally not terminating employees who followed Koch's mission, philosophy and principles. Elza attended at least 8 MBM training sessions.

Elza testified that at the MBM training session, she was told that when a problem developed with an employee, the initial assumption was to be that management was responsible for the problem. She was told that it was the supervisor's responsibility to give the employee warnings and additional training and to work with the employee to improve his or her performance before considering termination or other employment action. Koch's internal written management training materials include a document entitled "The Ten 'Mortal Sins' of Management." It includes the following "sin":

2. Management does not notify employees of unsatisfactory work or give employees the opportunity to correct their errors before discharging employees[.]

Plaintiff's response, Exhibit 38.

In December 1994, Bill Hanna, Koch's president, sent a letter to Koch employees and distributed a handbook entitled "Guide-

---

**3.** Elza also cites Keith's involvement in the dis- charge of another supervisor in 1993.

lines to Just Conduct." The letter provided as follows:

Dear Fellow Employee:

At Koch Industries, our core values are stated in the Mission, Philosophy and Principles of the company. They describe our long-term commitment to succeed by producing superior value for customers and providing security and opportunity for stockholders and productive employees. We strive to conduct our business in a manner that also benefits our communities and society. The enclosed *Guidelines to Just Conduct* booklet, which represents a logical extension of these values, is provided to assist employees as we apply ethical and legal standards to daily business practice.

Our principles commit us to conduct all business affairs lawfully and with integrity. This must be a part of every decision we make. We know that, as a company, our future success depends upon the decisions we make today and recognize that the highest standards of ethical performance are essential to this success.

We know too that rules cannot guarantee integrity or ethical conduct—only people can. Thus, at any time, it is acceptable for you to raise questions about any of your concerns—in fact, it's expected. Feel free to talk to your supervisor, or to someone in the support organization that deals with the matter about which you have concerns. Also, the Office of Corporate Compliance has been established to provide additional guidance and answer questions you may have. A 24–hour–a–day telephone number, called the *Koch Guide-Line*, can be used by calling 1–800–325–0544. You may also communicate your concerns in confidence by writing to the Corporate Compliance office at P.O. Box 21414, Wichita, KS 67208–7414. More information is provided about these resources in the enclosed *Guidelines* booklet.

Please take time to read the *Guidelines* booklet and sign the acknowledgment form enclosed. The signed original copy should be mailed in the postage-paid envelope. Please print your name and employee number under your signature.

Thank you for making a commitment with us to continue our practice of conducting business in an ethical and legal manner.

Very truly yours,

Bill Hanna

Elza Dep. Exhibit 17, Plaintiff's Response, Tab 19.

Elza testified that she signed and returned the acknowledgment after being instructed to do so by Rys. The acknowledgment contained the following sentence:

I acknowledge that the Guidelines to Just Conduct are guidelines for individual and business conduct and do not, in any way, constitute an employment contract or an assurance of continued employment or employment other than at-will.

Defendant's Exhibit A, Tab 19.

### III. Age Discrimination Claims.

Congress enacted the ADEA because it was concerned that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes. *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir.1996) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). The ADEA bans discrimination against employees based on age, but limits the protected class to workers who are 40 or more years old. *Greene*, 98 F.3d at 557. The KADEA also bans discrimination against employees based on age, but limits protection to those who are 18 or more years old. K.S.A. 44–1112(a).

To prevail on an ADEA claim, a plaintiff must establish that age was a determining factor in the employer's challenged decision. *Greene*, 98 F.3d at 557. The plaintiff need not show age was the sole reason, but must show that age "made the difference" in the employer's decision. *Id.* A plaintiff may attempt to meet this burden directly by presenting direct or circumstantial evidence that age was a determining factor in the employment decision. *Id. See also Kansas State Univ. v. Kansas Comm'n on Civil Rights*, 14 Kan.App.2d 428, 438, 796 P.2d 1046 (Kan.App.)(plaintiff may establish age discrimination under KADEA through

direct or statistical evidence of discriminatory intent), *rev. denied,* 246 Kan. 767 (1990).

■ Alternatively, a plaintiff may rely on the proof scheme for a prima facie case established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Greene,* 98 F.3d at 557–60; *Kansas State,* 14 Kan.App.2d at 438, 796 P.2d 1046 (same under KADEA). To establish a prima facie case, a plaintiff ordinarily must show (1) she was within the protected age group; (2) she was doing satisfactory work; (3) she was discharged despite the adequacy of the work; and (4) a younger person replaced her. *Greene,* 98 F.3d at 558–60.[4] Once the plaintiff establishes a prima facie case, a presumption of discrimination exists.

■ At this point the defendant has the burden of producing evidence that the adverse employment action was taken for a legitimate nondiscriminatory reason. *Id.* 98 F.3d at 558. If the defendant meets this burden of production, the presumption drops from the case and the plaintiff must present evidence that the proffered reason was not the true reason for the employment decision. *Id.* The Kansas Supreme Court has adopted the *McDonnell Douglas* burden shifting test for claims brought under the KADEA. *See Beech Aircraft Corp. v. Kansas Human Rights Comm'n,* 254 Kan. 270, 274, 864 P.2d 1148 (1993)(citing *Kansas State* and stating the test in slightly different terms).

**A. Direct Evidence of Discrimination.**

■ Elza first argues she has directly met her burden by presenting direct and circumstantial evidence of discriminatory intent. She cites Albright's comments, made within six months of her termination, that she should act like a younger person; that older employees could be replaced with cheaper employees; and that it would be difficult to fire her because of her age.

In *Greene,* the Tenth Circuit held that evidence that eight senior managers were replaced by younger managers within a one-year period was sufficient to create "a justiciable issue of material fact which must proceed to trial." 98 F.3d at 561. *Greene* also noted that remarks from the plaintiff's supervisor that Greene "didn't fit in with the new culture" and "I just don't have a place for you on the new team," when viewed against the backdrop of the replacements, amounted to evidence of discrimination based on age. *Id.*

Here, Albright's comments, when viewed against the backdrop of the replacement of both of the supervisors in the mail department with substantially younger employees, are sufficient to raise a justiciable issue of material fact as to whether Elza's discharge was motivated by her age.

Koch argues that Elza was not replaced by a younger person because some of her responsibilities were assumed by an older person. This argument must be rejected because the record, when viewed in the light most favorable to Elza, indicates that the older employee did not assume any of Elza's supervisory responsibilities. Elza's supervisory responsibilities were assigned first to Albright, then to Highfill; both are substantially younger than Elza.

Koch next argues that Albright's comments are not sufficient to constitute direct evidence of discrimination, citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Cone v. Longmont United Hospital Association,* 14 F.3d 526, 530 (10th Cir.1994); *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1549 (10th Cir.1987); *Baucom v. Amtech Sys. Corp.,* 131 F.3d 151, 1997 WL 748668 (10th Cir.1997) (table); *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 40 (5th Cir.1996); *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569 (7th Cir.1989), and *Duart v. FMC Wyoming Corp.,* 859 F.Supp. 1447, 1457–58 (D.Wyo.1994), *affirmed* 72 F.3d 117 (10th Cir.1995). Koch appears to be arguing that the evidence must be extremely direct,

---

4. The exact elements required to establish a prima facie case of discrimination may vary, depending on the circumstances of the case and the nature of the plaintiff's claims. *Greene,* 98 F.3d at 560. The usual test is appropriate in this case.

almost suggesting that Elza can only meet her burden directly by citing evidence that Albright or Keith said "we are firing you because you are too old" on the day she was fired. However, that is not the holding of *Greene.* Elza can meet her burden directly by citing direct or circumstantial evidence of discriminatory intent. 98 F.3d at 557.

■ Koch addresses Albright's comments separately. While each comment alone might not raise an inference of discriminatory intent, the court must consider all of Albright's comments and the circumstances under which they were made. *See Greene, supra.* Taken together, Albright's comments under the circumstances do raise an inference of discriminatory intent.

In *Hazen,* the Supreme Court noted that discrimination based on seniority was not prohibited by the ADEA and therefore evidence that an employee was discharged because his retirement eligibility was about to vest was not direct evidence of prohibited age discrimination. *Hazen* might be applicable if Albright had indicated he could replace more senior employees and save money, and if he had not made a comment about it being hard to fire Elza because she was in a protected age group. However, Albright said he could replace older employees, an indication the factor he was considering was age, not just seniority. Significantly, *Hazen* remanded for consideration of whether indirect evidence was sufficient to raise a material question of fact, apparently under the *McDonnell Douglas* test. *Hazen,* 507 U.S. at 613, 113 S.Ct. 1701. The Court suggested that: (1) two isolated comments by the employer; (2) a requirement that the employee sign a confidentiality agreement when other employees had not been required to do so; (3) the replacement of the employee with a younger man; and (4) evidence that the employer's proffered reason was pretextual, "may well suffice to support liability." *Id.*

In *Cone,* the plaintiff took a leave of absence, knowing that her position would be filled. When she attempted to return to work, no suitable positions were available and she was terminated pursuant to a policy to terminate employees on leave for more than a year. The plaintiff tried to show the stated reason was pretextual by citing three comments made years before and in reference to other employees. Only one of the three comments was made by a supervisor who participated in the decision to terminate the plaintiff and the remark referred to long-term, rather than older employees. The Tenth Circuit described the comments as stray remarks and noted that when taken in context, they did not support an inference of age bias. *Cone* 14 F.3d at 530–32. Similarly in *Nichols,* the Fifth Circuit held that discriminatory remarks must be made by a decision maker to be probative.

Here, Elza cites Albright's comments made within the time frame of her discharge and shortly after he assumed responsibility for the mail room, one directly addressed difficulties Koch would encounter if it tried to discharge her and at least two directly referenced age. It is reasonable to infer from the record that both Albright and Keith participated in the decision to terminate Elza. Furthermore, the comments must be considered against the backdrop of the replacement of both of the supervisors in the mail room with younger employees during a short time period. *See Greene, supra.*

In *Furr,* the Tenth Circuit was concerned with the propriety of a jury instruction. *Furr* reasoned that certain discriminatory statements did not constitute direct evidence of discrimination. *Furr* does not set forth the remarks at issue or the context in which they were made. It provides little or no guidance with respect to what evidence is sufficient to avoid summary judgment. *Furr,* like *Hazen,* actually supports Elza's position that, at least under the *McDonnell Douglas* test, this case should proceed to trial.

*Baucom* involved a single, isolated remark. In this unpublished opinion, the Tenth Circuit emphasized that the remark was troubling, but noted that the remark occurred more than three months before the decision was made to discharge the employee and that there was no other evidence of age-related remarks. *Duart* involved isolated remarks about older employees and overwhelming evidence that a legitimate business reason motivated the discharge. There also

was some question whether the manager making the remarks was involved in the decision to terminate the plaintiff. The facts of this case are much closer to those of *Greene,* a controlling decision, than those of *Baucom* and *Duart.* The facts of *LaSalle,* which involved alleged race discrimination in the termination of a contract between two businesses, do not even remotely resemble the facts of this case.

Accordingly, Koch's motion for summary judgment on Elza's age discrimination claims must be denied because Elza has cited evidence from which it is reasonable to infer that she was terminated based on her age. Assuming, arguendo, that Elza has not met her burden of showing discrimination directly, the court will consider whether Elza met her burden under the *McDonnell Douglas* burden shifting analysis.

B. *McDonnell Douglas* Burden Shifting Analysis.

Elza argues she has established a prima facie case under *McDonnell Douglas.* Koch argues Elza has failed to present evidence of age discrimination under *McDonnell Douglas.* Koch also argues that Elza was terminated for legitimate business reasons and that she cannot show the proffered reasons are a mere pretext for discrimination. Elza argues she has presented evidence from which a reasonable fact finder could conclude Koch's proffered reasons for her discharge are pretextual.

■ Koch does not dispute that Elza was within a protected age group when she was discharged, thus she has satisfied the first prong of the *McDonnell Douglas* test. Koch argues Elza cannot establish that she was doing satisfactory work at the time of her discharge. Koch relies on evidence that Elza had been counseled about her job performance, was removed from her position as a supervisor in response to the sexual harassment investigation, and was not returned to her position allegedly because of substandard performance. In response, Elza cites evidence that she had worked for Koch for a number of years as a supervisor and that her last employee evaluation, while suggesting areas for improvement, concluded that her

department was well run and efficient. Elza also cites her own testimony and that of another employee that her work was satisfactory at the time she was removed from her position as a supervisor. This is sufficient evidence to satisfy the second prong of the *McDonnell Douglas* test. *See MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1121 (10th Cir.1991)(plaintiff can meet second prong of *McDonnell Douglas* test through her own testimony that her work was satisfactory, even if disputed by the employer).

Koch does not dispute that Elza was subjected to an adverse employment decision, although Koch does suggest that Elza did not try to find other employment at Koch and therefore she has failed to make a prima facie showing under *McDonnell Douglas.* As previously noted, when all reasonable inferences are drawn in Elza's favor, any other positions available at Koch were not comparable supervisory positions and Elza was constructively, if not actually, discharged.

■ Finally, Koch argues Elza cannot establish that she was replaced by a younger person. Koch appears to be arguing that no single employee assumed Elza's responsibilities. However, Koch's own witnesses testified that Albright and then Highfill assumed Elza's supervisory responsibilities. As previously noted, Albright and Highfill are both substantially younger than Elza. Elza has established a prima facie case of age discrimination.

Koch next argues that Elza's performance was substandard, and that is why Koch no longer wanted her to hold a supervisory position in the mail room. Although Koch cites no evidence in its argument, the court presumes Koch is referring to Rys's criticisms of Elza's performance and Keith's concerns with her management abilities, which Koch cited in its statement of facts. *See Greene,* 98 F.3d at 558 (defendant must produce evidence that adverse employment actions were taken for legitimate reasons).

■ Koch also argues that once it articulates legitimate reasons, Elza must show its stated reasons are "false." But this is not the law. Koch cites *Rea v. Martin Marietta*

*Corp.*, 29 F.3d 1450 (10th Cir.1994). *Rea* actually held that a plaintiff must show the proffered reasons are pretextual. 29 F.3d at 1455. What this means is that the presumption of discrimination falls from the case and the plaintiff must meet her original burden of establishing intentional discrimination. The plaintiff can do this by citing evidence that a discriminatory reason more likely motivated the employer or the proffered reasons are unworthy of credence. *Rea*, 29 F.3d at 1455.

■ Elza cites the following evidence in support of her claim that the proffered reasons are pretextual: (1) Albright's remarks; (2) the lack of any effort by Albright and Keith to follow Koch's MBM philosophy and communicate to Elza the extent of their concerns about her performance as a supervisor before discharging her; (3) the inability of Albright and Keith to articulate a particular reason for their decision not to return Elza to her supervisory duties, other than Keith's statement that he did not see a place for her; (4) Rys's statement that Elza continued to manage the mail room in an efficient and cost effective manner; (5) Koch's failure to advise Elza she was being relieved of her supervisory duties for performance related reasons; and (6) the abrupt reversal of Albright's decision to return Elza to her supervisory position. The court agrees with Elza that this is sufficient evidence [5] to raise a question of fact as to whether Koch's stated reason for the decision not to return Elza to her supervisory position was a pretext for age discrimination.

Koch cites out of context Elza's deposition testimony that she did not know why she was terminated. Elza clearly states in her testimony that she thought she was terminated because of her age. Koch also cites the irrelevant testimony of Elza's husband as to why he thought she was terminated.

Koch then argues that Elza welcomed the decision to temporarily relieve her of her supervisory duties during the sexual harass-

ment investigation. Assuming Elza welcomed the decision, this is not the same as Elza desiring to be permanently relieved of her supervisory responsibilities. Finally, Koch repeats its arguments that Elza failed to accept or seek other employment at Koch. As previously noted, when viewed in the light most favorable to Elza, Koch made it clear to her that a comparable position was not available in the mailroom or elsewhere.

Accordingly, Koch's motion for summary judgment on Elza's age discrimination claims also must be denied because Elza has presented a prima facie case of age discrimination and has cited evidence from which a reasonable factfinder could conclude Koch's proffered reasons for her discharge were pretextual.

## IV. Implied Employment Contract Claim.

Kansas traditionally followed a strict employment-at-will doctrine in the absence of an express or implied in fact contract for a fixed term of employment. *See Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976). However, beginning with *Murphy v. City of Topeka–Shawnee*, 6 Kan. App.2d 488, 630 P.2d 186 (1981)(retaliatory discharge for filing workers compensation claim) [6], Kansas appellate courts started recognizing exceptions to the doctrine. *See Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 131–136, 815 P.2d 72 (1991)(discussing development of the case law).

In *Allegri v. Providence–St. Margaret Health Center*, 9 Kan.App.2d 659, 684 P.2d 1031 (1984), the Kansas Court of Appeals recognized a cause of action for breach of an implied in fact contract of employment where there was no evidence of a specific fixed term of employment. Citing *Johnson*, the court held that the following factors are to be considered when deciding whether an implied contract of employment exists: written or

---

**5.** Elza cites additional circumstantial evidence of discriminatory intent, such as Koch's alleged practice of referencing employees' ages on various employment decision forms. The court need not consider this evidence and Koch's arguments that the evidence is not relevant or that it is unpersuasive, as Elza has raised a material ques-

tion of fact as to whether Koch's proffered reasons were pretextual in any event.

**6.** *Johnson* hints that a properly presented retaliatory discharge claim would be recognized. 220 Kan. at 56, 551 P.2d 779.

oral negotiations; the usages of business; the situation and object of the parties; the nature of the employment; and all circumstances surrounding the transaction. *Allegri,* 9 Kan.App.2d at 663, 684 P.2d 1031. The court held it was error to grant summary judgment in favor of the employer based on consideration of only two factors—an employee handbook and a single conversation between the parties. *Id.* at 664, 684 P.2d 1031. The court held the following factors, apparently in addition to the employee manual and the conversation, were sufficient to raise a material question of fact as to whether there was a mutual intent to employ the plaintiff as long as he performed his job satisfactorily: (1) the longevity of his employment; (2) the nature of his employment; (3) the employer's request that he return to employment after an absence to pursue private practice; (4) the plaintiff's curtailment of his private practice after rejoining the defendant; and (5) the excellent employment evaluations the plaintiff received from the defendant. *Id.*

In *Morriss v. Coleman Co.,* 241 Kan. 501, 738 P.2d 841 (1987), the Kansas Supreme Court embraced the holding of *Allegri,* noting that *"Allegri* is important because it established clearly the rule that intent of the contracting parties is normally a question of fact for the jury." *Morriss,* 241 Kan. at 512, 738 P.2d 841.

In *Morriss,* a supervisor and a secretary were discharged after they traveled together to pick up a company car. Coleman had a supervisory manual which indicated that employees would only be discharged for good cause. The supervisor testified that Coleman normally warns employees of a performance deficiency and allows the employee to take corrective action before resulting to discharge. The only exceptions are where an employee flagrantly violates company rules in a manner where corrective measures are neither feasible nor warranted. The secretary testified she was aware of Coleman's "good cause" termination policy and its policy of resorting to termination only after other measures had failed.

The supervisor's manual contained the following language: "Nothing in this policy manual should be construed as an employment contract or guarantee of employment." *Morriss,* 241 Kan. at 506, 738 P.2d 841. The Kansas Supreme Court addressed the impact of this language:

> The disclaimer in the supervisor's manual quoted above does not as a matter of law determine the issue. It has not been established that the disclaimer was brought to the personal attention of its employees or that it was intended by Coleman to create an unqualified employment-at-will relationship, especially in view of other provisions in the manual and the statements made by Coleman's supervisors to the employees. There has been no trial in this case, and we only hold that the evidence presented in the record at the time summary judgment was granted was insufficient to require summary judgment in favor of the defendants as a matter of law.

*Morriss,* 241 Kan. at 514, 738 P.2d 841.

In *Brown,* the Kansas Supreme Court, citing *Morriss,* explained the implied employment contract doctrine as follows:

> It recognizes an implied obligation on the employer to not terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will. Thus, employee manual guidelines that set out the grounds and procedures for discharge are viewed as part of the employment contract and bar the employer from violating its own policies in discharging an employee.

*Brown,* 249 Kan. at 135, 815 P.2d 72.

*Brown* later examines the plaintiff's evidence and determines that it is sufficient to avoid a directed verdict for the employer:

> The evidence offered by Brown is not extensive. The Personnel Policies Manual contains specific provisions for terminating an employee, including a list of policy violations that are grounds for termination. Yet this manual contains two statements stressing that employment with UMH is "at will." Brown presents no evidence of additional conversations or statements made to him indicating that the terms of the Personnel Policies Manual were meant

to be an implied contract of employment requiring his continued employment unless dismissed for cause. Brown instead relies upon the trial testimony of UMH supervisory employees indicating their intent to treat employees fairly and to follow the rules.

Although the facts and inferences reasonably to be drawn from the evidence in favor of Brown are not strong, it is possible that reasonable minds could reach different conclusions based upon the evidence about whether a motion for directed verdict should be granted or denied. In such a case, the evidence must be submitted to the jury.

*Brown*, 249 Kan. at 139, 815 P.2d 72.

In *Koopman v. Water Dist. No. 1 of Johnson County*, 972 F.2d 1160, 1165 (10th Cir. 1992), the Tenth Circuit interpreted *Brown*. The court held that once a plaintiff cites a written personnel policy, not much additional evidence is required to create an issue of fact on the claim. *Koopman*, 972 F.2d at 1165. In *Koopman*, the plaintiff cited a written policy that discharges must be approved by management and that an employee may seek review of the decision by the governing board. He also cited: a statement from the general manager that he could appeal his termination; a statement from the director of personnel safety and training that there was always a reason for a termination; the separation form which contained a place for indicating the reason for the termination; and his own personal belief that a reason was required, based on his observations that when other employees were terminated a reason was always provided. The Tenth Circuit held this was sufficient to create an issue of fact for the jury. *Id.*, 972 F.2d at 1165–66.

■ Here, the "sin" identified in Koch's written supervisor training materials, together with Elza's testimony that she was assured that as long as she followed Koch's policies she would not be discharged, and Markel's deposition testimony, is sufficient under *Brown* and *Koopman* to raise a material question of fact as to whether Koch had a policy of only terminating employees for cause. It is not necessary to consider the other evidence Elza cites, such as the *Guidelines* and cover letter.

■ Koch raises a number of additional arguments, none of which are persuasive.[7] Koch first argues that Elza was free to leave at any time, thus an implied employment contract cannot have existed. The court agrees that whether Elza agreed to some limits on her right to quit, such as agreeing to provide two weeks notice, is a factor to consider. However, imposing a strict requirement that the employee's ability to quit must be limited is inconsistent with the language of *Brown*, which holds an employer through its own policies can create an implied employment contract. To the extent that Kansas law may require the intent of both parties to be bound, Elza's implied promise is to comply with Koch's policies, not to work for Koch forever. Koch similarly argues that Elza must present evidence of negotiation. While evidence of negotiation would certainly be relevant, the controlling cases have not required such a showing to avoid summary judgment. *See Morriss, supra* (evidence of firm's policy and secretary's awareness of policy sufficient to require submission to jury).

Koch next argues a unilateral expectation on the part of the employee is not enough. *See Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1493 (10th Cir.1995). Koch renews this argument later, citing *Kastner, supra*. In *Panis*, the plaintiff failed to cite any communication from her employer that she would be terminated only for cause. In *Kastner*, the plaintiff could point to no direct written evidence of a "for cause only" termination policy and cited no oral assurances of such a policy. Here, Elza cites a Koch personnel manual, statements from Koch trainers and testimony from a Koch executive

---

7. Koch also cites a phenomenal number of non-controlling and unpublished cases. The only controlling implied-employment contract cases Koch cites directly are *Johnson, supra*, and *Kastner v. Blue Cross & Blue Shield of Kansas, Inc.*, 21 Kan.App.2d 16, 894 P.2d 909 (Kan.App.), *rev. denied*, 257 Kan. 1092 (1995), apparently deciding to ignore developments in controlling Kansas Supreme Court decisions. Koch does occasionally cite more recent Kansas Supreme Court case law parenthetically. Plaintiff cites the controlling cases and a few unpublished cases. The controlling cases provide sufficient guidance and the court will not address each of the unpublished and non-controlling cases cited by the parties.

interpreting Koch's policies. She is not relying merely on her own unilateral expectations.

Koch next cites Elza's deposition testimony where she admits Koch's written materials do not use the word "contract" or expressly state that an employee will not be terminated if they follow Koch's policies. This is not the same as admitting that Koch did not have a policy of discharging employees only for cause.

 Koch next relies on the disclaimer attached to the *Guidelines,* which Elza signed. The court agrees the disclaimer is evidence that Koch did not intend to create a contract. However, a disclaimer is not dispositive of whether an implied contract exists when the record contains statements from company personnel indicating a contrary intent. *Sharon v. Yellow Freight System, Inc.,* 107 F.3d 21, 1997 WL 39483 (10th Cir.1997)(table)(citing *Brown, Morriss,* and *Allegri, supra* ). Furthermore, Elza does not need to rely on the *Guidelines.* Koch has not cited a disclaimer in the written training materials.

Koch next mischaracterizes the record and claims Elza admitted that no one had told her she would not be discharged if she followed Koch's policies. Koch next claims Elza provided no foundational details about when the statements were made. Elza testified the statements were made during MBM training sessions by the trainers. While Elza could not remember the dates at her deposition, she said the dates were in her calendar. The calendar was produced and the dates identified. Furthermore, Markel's testimony and his inability to come up with an example of when an employee who followed Koch's policies would be terminated, support Elza's testimony of the substance of Koch's policy.

 Koch next cites Elza's request for a letter of reference and her statement that she did not know how long she would be at Koch. In the context of a sexual harassment investigation of Elza, her request for a reference and her concerns that she might leave Koch are not evidence that Elza thought Koch would discharge her without cause. In any event, evidence that a party was concerned about a possible breach is not dispositive evidence that a contract did not exist.

Finally, Koch argues in a footnote that even if Elza raises a material question of fact as to whether an implied employment contract existed, Koch complied with the contract by counseling Elza before discharging her. As noted in the discussion of Elza's discrimination claims, Elza has raised a material question of fact regarding the efforts Koch made to counsel her, and the real motive for her discharge.

Accordingly, Koch's motion for summary judgment on Elza's implied employment contract claim must be denied.

### V. Conclusion.

IT IS ACCORDINGLY ORDERED this 11th day of August, 1998, that Koch's motion for summary judgment is granted with respect to Elza's state breach of an express contract claim and her state tort claims; Koch's motion is denied with respect to Elza's ADEA, KADEA and state breach of implied employment contract claims.