No. 47,965

Lenard Johnson, *Appellant*, v. National Beef Packing Company, *Appellee*.

(551 P. 2d 779)

June 12, 1976.

*Harold K. Greenleaf, Jr.,* of Smith and Greenleaf, of Liberal, argued the cause and was on the brief for the appellant.

*Gene H. Sharp,* of Vance, Hobble, Neubauer, Nordling & Sharp, of Liberal, argued the cause, and *Richard R. Rock,* of Rock & Smith, of Arkansas City, was with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This action was instituted by plaintiff-appellant, Lenard Johnson, against his former employer, defendant-appellee, for loss of wages and punitive damages for the alleged wrongful discharge from his employment.

The dispositive issue presented is whether there was a contract express or implied for a fixed term of employment. The appeal is from a summary judgment in favor of defendant rendered after interrogatories of several witnesses and the deposition of plaintiff had been filed. When defendant's motion for summary judgment was presented to the trial court, the parties stipulated that all of the evidence relating to the terms of the contract of employment was before the court.

In the fall of 1971 plaintiff quit his employment with a meat packing plant in Iowa. Plaintiff knew there was a packing plant in Liberal, Kansas, and came there in September 1971 and sought

employment from defendant. Plaintiff filed an employment application with defendant and was hired on October 12, 1971. Plaintiff's account of the only conversation he had with a representative of defendant, at the time of his employment, was that he was told that he would be a probationary employee for ninety days and if during that period he could prove that he could lug beef he would become a permanent employee. Plaintiff makes no contention, nor was there any evidence, that the duration of his employment was agreed upon or ever discussed and no written contract was executed. In his deposition plaintiff acknowledged that his understanding of the terms of his employment was "I had the right to quit at any time I wanted to."

Plaintiff worked as a "beef lugger" until March 1972, when he injured his shoulder in the course of his duties. We were informed on oral argument plaintiff was awarded workmen's compensation benefits for this injury. Subsequent to the shoulder injury, plaintiff was transferred to a different job which involved stacking boxes and loading trucks. Plaintiff was later transferred to a position entitled "manifestor," which involved the recording of the shipments which were loaded on respective trucks. Plaintiff continued to work on the manifestor job until a few days prior to his termination when he was temporarily assigned to another job which entailed some heavier lifting. Plaintiff informed his supervisor that he was unable to lug the beef which he was required to do on this last job, and as a result thereof was discharged several days later, on October 7, 1972.

Plaintiff relates the events preceding his discharge in these words:

". . . On Thursday and Friday prior to my termination I went in and told Rod Allen that the work was bothering my shoulder. On the morning of my termination we were loading a truck with rounds and the whole gang, was working. I was instructed to lug the rounds by Chuck Watson. I didn't refuse him; I told him my shoulder wouldn't take it. I also talked to my lead man, Dennis McCarty, and he instructed me to load the rounds. I told him my shoulder wouldn't take it, and then Chuck Watson took me to the office and told me he would get my time made out. . . ."

This litigation ensued and following summary judgment for defendant plaintiff appealed stating his one point in these words:

"The Court erroneously granted Defendant's Motion for Summary Judgment and in ruling that a fixed period of time is necessary for Plaintiff, in this instance, to sustain his claim for damages; and in failing to rule that the various exhibits, A through F, and in particular the National Beef Packing Company Policy Manual constituted an implied contract of employment if, in fact, they did not constitute an express contract of employment."

This court follows the general rule that in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged. (*Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan. 543, 545 P. 2d 312; *Lorson v. Falcon Coach, Inc.*, 214 Kan. 670, 522 P. 2d 449; *May v. Santa Fe Trail Transportation Co.*, 189 Kan. 419, 370 P. 2d 390; *Swart v. Huston*, 154 Kan. 182, 117 P. 2d 576; and 53 Am. Jur. 2d, Master and Servant, § 43, pp. 117-118.)

Plaintiff concedes the rule to be controlling in Kansas, but attempts to escape the application thereof by arguing that a "Company Policy Manual," distributed to employees during plaintiff's employment, constituted an express contract or served as a basis for establishing a contract of employment by implication. The record discloses that the policy manual was published and distributed to employees sometime in late spring or summer of 1972, some nine or ten months after the commencement of plaintiff's employment. Plaintiff points out a statement in the manual "No employee shall be dismissed without just cause." Plaintiff also relies on a statement in one of defendant's advertisements that "This is not seasonal employment. . . ." Plaintiff argues that the statements referred to were binding on defendant in its employment relationship, and that they fix the employment duration at life or until an employee reaches retirement age.

A copy of the manual has been supplied to us with the record on appeal. It appears to be a general statement of company policies dealing with employee's benefits, insurance, vacations, holidays, etc., as well as general operating procedures and plant rules. The manual does provide that new employees shall be probationary employees until they have worked ninety days, at which time an employee would become a regular full-time employee. This conforms with plaintiff's account of his conversation at the time of his employment. We find nothing in the manual expressly providing for a fixed term of employment, nor is there language from which a contract to that effect could be inferred.

General rules applicable to employment are set forth in 53 Am. Jur. 2d, Master and Servant, § 27:

"Where no definite term of employment is expressed, the duration of employment depends on the intention of the parties as determined by circum-

stances in each particular case. The understanding and intent of the parties is to be ascertained from their written or oral negotiations, the usages of business, the situation and object of the parties, the nature of the employment, and all the circumstances surrounding the transaction. . . ." (p. 103.)

Concerning an agreement for permanent employment the same treatise [Master and Servant], § 32 reads:

"It is the general rule that a contract to give a person permanent employment, in the absence of some further express or implied stipulation as to the duration of the employment or of a good consideration in addition to the services contracted to be rendered, is no more than an indefinite general hiring terminable at the will of either party. An agreement to give 'permanent employment' means to give a steady employment, a steady job, a position of some permanence, as contrasted with a temporary job or temporary employment. Such agreement does not mean that the employment shall be for life, or for any fixed or certain period, but only that it shall continue indefinitely, and until one or the other of the parties shall wish for some good reason to sever the relation." (pp. 107-108.)

Moreover, as we have previously pointed out, the manual was not published until long after plaintiff's employment. It was only a unilateral expression of company policy and procedures. Its terms were not bargained for by the parties and any benefits conferred by it were mere gratuities. Certainly, no meeting of the minds was evidenced by the defendant's unilateral act of publishing company policy.

Plaintiff argues that the term "permanent employment" should be construed to mean some fixed or definite period of time, such as for life or until age sixty-five. As previously pointed out, an agreement to give permanent employment simply means to give a steady job of some permanence, as distinguished from a temporary job or temporary employment. (53 Am. Jur. 2d, Master and Servant, § 32, pp. 107-108.)

While what has been said disposes of the controlling issue presented, we shall briefly comment on other matters mentioned in the briefs.

Plaintiff complains of loss of vacation pay. By the terms of the Company Policy Manual vacation eligibility requires employment for a period of one year. Plaintiff was not eligible for vacation pay. Plaintiff also asserts that he was not granted a grievance hearing as contemplated by the manual. However, plaintiff admits that he never submitted a written grievance within five days, as required by the manual. Moreover, he was granted a conference with Mr. Jacobson, company president, which is the final step in grievance procedure outlined by the manual.

Concerning plaintiff's argument that he was dismissed without just cause, defendant answers that plaintiff's dismissal was for refusal to obey orders of his supervisors—conduct which is expressly specified as a ground for dismissal in a section of the manual entitled "general plant rules."

The record clearly indicates that plaintiff's theory was that the policy manual constituted an express contract of employment or in the alternative that a contract should be implied from the manual and company advertisements. In his one point on appeal, plaintiff states the error relied upon was the trial court's failure to find either an express or implied contract of employment. In his brief on appeal plaintiff states:

"The principal issue involved is whether there is an express or at least an implied contract of employment by and between Plaintiff and Defendant by virtue of the company policy manual. . . ."

Notwithstanding his definite commitment to a contract theory before the trial court and in his brief on appeal, plaintiff has, on the day the appeal was argued to this court, presented a supplementary brief with additional citations together with a motion that leave be granted to file the brief. Defendant has filed a response strenuously objecting on the ground that plaintiff is out of time and further that he is attempting to change his theory of the case from contract to tort. We think defendant's objection is well-taken. We have, nevertheless, examined the additional cases cited by plaintiff and find them to sound in tort on a theory generally involving termination of employment allegedly motivated by malice or based on retaliation constituting a contravention of public policy, such as refusal by an employee to give perjured testimony as in *Petermann v. International Brotherhood of Teamsters*, 174 C. A. 2d 184, 344 P. 2d 25, or reporting for jury service in violation of employer's orders as in *Nees v. Hocks*, (Or.) 536 P. 2d 512.

In the instant case no claim was made that plaintiff's termination was motivated by malice or that it was based on retaliation for some conduct of plaintiff.

The parties stipulated that all evidence relating to a contract of employment was before the trial court. There was no issue as to any material fact. Under such circumstances, summary judgment was properly rendered under the rule set forth in *Lorson v. Falcon Coach, Inc.*, supra.

The judgment is affirmed.