(684 P.2d 1031)
No. 56,158

THOMAS J. ALLEGRI, *Appellant,* v. PROVIDENCE-ST. MARGARET HEALTH CENTER, ROBERT H. BRYANT and JAMES J. O'CONNELL, *Appellees.*

660

Opinion filed August 2, 1984.

*Edward V. White,* of Kansas City, and *R. Lawrence Ward,* of Shughart, Thomson & Kilroy, a Professional Corporation, of Kansas City, Missouri, for the appellant.

*N. Jack Brown,* of Boddington & Brown, of Kansas City, for the appellees.

Before FOTH, C.J., PARKS and SWINEHART, JJ.

SWINEHART, J.: This appeal arises out of the termination on January 29, 1982, of plaintiff Thomas J. Allegri's employment by the defendant, Providence-St. Margaret Health Center. Plaintiff is a physical therapist who had worked for defendant Health Center and its predecessor institutions, St. Margaret Hospital and Providence Hospital, since 1955.

Plaintiff was the first chief physical therapist for St. Margaret Hospital, and was in charge of its physical therapy department until 1966. In 1966 plaintiff left the hospital for his own private practice. He returned to St. Margaret's approximately eighteen months later with the understanding that he would work three days per week at the hospital and two days per week with his private practice. Plaintiff was considered a full-time employee under this arrangement. In 1971 plaintiff also took over as head of the physical therapy department at Providence Hospital in preparation for the merger with St. Margaret Hospital. When the hospitals merged in 1972, plaintiff became director of the merged physical therapy department. Plaintiff expanded this department to include occupational therapy and speech therapy, and helped develop the area's first rehabilitative services department incorporating those two disciplines with physical therapy.

Plaintiff did not have either an express written or oral contract of employment with defendant Health Center, although defendant did sign two separate one-year contracts with St. Margaret Hospital covering the time period May 27, 1968, to May 26, 1970.

On January 29, 1982, plaintiff was terminated by Providence-St. Margaret Health Center because of an alleged conflict of interest. This termination was effected by defendant James J. O'Connell, the executive director of Providence-St. Margaret Health Center, after consultation with plaintiff's immediate supervisor, defendant Robert H. Bryant. The alleged conflict of

interest occurred when a physical therapist, working for defendant Health Center under plaintiff's direction, left the Health Center to work for plaintiff in his private practice. At that time physical therapists were scarce in the community.

Plaintiff contended that his termination breached an implied contract of employment with the defendant Health Center which provided that he could continue to work as long as his job performance was satisfactory and he abided by the hospital rules. This implied contract, plaintiff contended, was based on the course of dealing between plaintiff and defendants. That course of dealing allegedly included plaintiff's favorable performance evaluations and salary increases, plaintiff's sacrifice of additional income from his private practice in order to work three days a week at the Health Center, a hospital administrator's statement to plaintiff that plaintiff could work until age sixty-five if he abided by hospital rules, and the Health Center's Employee Handbook, which led plaintiff to believe he could be terminated only "for cause."

A copy of that Employee Handbook was made available to plaintiff by October, 1979. The Handbook provided that "[i]t is the labor policy of Providence-St. Margaret Health Center to . . . treat employees fairly, with dignity and respect." The Handbook also provided as follows:

"CONTINUOUS SERVICE

Continuous service is that time of full-time or part-time employment at the Health Center which is considered unbroken and is used to compute any benefits for which the employee may be eligible according to job classification. Continuous service is broken by a termination which may result from one of the following:

    a.  A voluntary resignation.

    b.  An involuntary termination due to misconduct or negligence in line of duty.

    c.  An involuntary termination due to inability to perform work satisfactorily.

    d.  Failure to report for work at the expiration of a leave of absence and in accordance with the terms of the leave.

    e.  Failure to call in or show up for work for three consecutive scheduled work shifts.

    f.  Other violations of Health Center policy as dealt with in the Progressive Disciplinary Action Policy."

The progressive "Disciplinary Action Policy" of the defendant Health Center was set forth on pages 15-19 of the Employee Handbook. The purpose of that policy was stated to be "[t]o

insure that all employees in all departments of the Health Center receive fair, equitable, and consistent treatment in terms of discipline and discharge." The policy specifically provided that "[c]orrective action, except for severe and extraordinary cases of misconduct calling for immediate discharge, will be progressive in nature." The Handbook then listed "[t]he corrective actions which may be taken progressively in their order of increasing severity" as "written warning," "written reprimand," "suspension" and finally, "discharge." The Handbook then listed the following "examples of misconduct" which would warrant a "discharge upon first offense":

"CATEGORY I

Willful violation of safety regulations

Deliberate abuse of a patient, guest or employee

Theft of Health Center, patient, employee or guest property

Insubordination

Falsification of any official Health Center records

Immoral or lewd conduct on Health Center property

Absent from work without prior notification for three consecutive work shifts

Malicious or deliberate abuse of Health Center property

Unauthorized possession of firearms or weapons on Health Center property

Intoxication by alcohol or illegal drugs while on duty

Punching another employee's timecard or falsifying time records."

Additionally, plaintiff sought recovery in tort against defendants O'Connell and Bryant for their intentional interference with the alleged implied contract and for their committing of acts alleged to be malicious, willful and wanton.

The district court found that there existed no contract, either express or implied, which covered the duration of plaintiff's employment by defendant Health Center. Therefore, such employment was terminable at will. Further, the court denied plaintiff's tort claim because it found that such a cause of action would require proof of a contract. Accordingly, defendants' motion for summary judgment was granted. This appeal followed.

The general rules relative to summary judgments are clear:

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact remaining, leaving the moving party entitled to a judgment as a matter of law." *Zehring v. Wickham*, 232 Kan. 704, 706, 658 P.2d 1004 (1983).

"As a general rule, an appellate court, in examining the validity of a motion for summary judgment, should read the record in the light most favorable to the

party who defended against the motion. It should accept such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant." *Stanfield v. Osborne Industries, Inc.,* 7 Kan. App. 2d 416, Syl. ¶ 7, 643 P.2d 1115, *aff'd in part, rev'd in part* 232 Kan. 197, 654 P.2d 917 (1982).

"A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties." *Stanfield v. Osborne Industries, Inc.,* 7 Kan. App. 2d 416, Syl. ¶ 8; *Henrickson v. Drotts,* 219 Kan. 435, 438, 548 P.2d 465 (1976).

Concerning employment contracts, Kansas follows the general rule that "in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged." *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779 (1976); *Murphy v. City of Topeka,* 6 Kan. App. 2d 488, 630 P.2d 186 (1981); *Cussimanio v. Kansas City Southern Ry. Co.,* 5 Kan. App. 2d 379, 617 P.2d 107 (1980). See generally 53 Am. Jur. 2d, Master and Servant § 27; 56 C.J.S., Master and Servant § 31.

"A contract implied in fact arises from facts and circumstances showing mutual *intent* to contract. . . . A contract implied in law, or quasi contract, exists regardless of assent. It is a fiction of the law designed to prevent unjust enrichment." *Mai v. Youtsey,* 231 Kan. 419, 422, 646 P.2d 475 (1982).

Plaintiff claims that his employment contract was implied in fact.

Determining whether an implied contract of employment exists requires a factual inquiry, as the Kansas Supreme Court noted in *Johnson:*

" 'Where no definite term of employment is expressed, the duration of employment depends on the intention of the parties as determined by circumstances in each particular case. The understanding and intent of the parties is to be ascertained from their written or oral negotiations, the usages of business, the situation and object of the parties, the nature of the employment, and all the circumstances surrounding the transaction.' " *Johnson v. National Beef Packing Co.,* 220 Kan. at 54-55, quoting 53 Am. Jur. 2d, Master and Servant § 27, p. 103.

Intent is normally a question of fact for the jury, *State v. Edwards,* 209 Kan. 681, Syl. ¶ 3, 498 P.2d 48 (1972), and may be shown by acts, circumstances and inferences reasonably deducible therefrom and need not be established by direct proof. *State v. Acheson,* 3 Kan. App. 2d 705, Syl. ¶ 4, 601 P.2d 375, *rev. denied* 227 Kan. 927 (1979).

The journal entry reflects that the court, in determining whether any evidence existed of a mutual intent to contract, specifically considered only two factors: the Employee Handbook, and a conversation between plaintiff and Mr. Johnson, then an administrator of St. Margaret Hospital. Even if we were to assume the correctness of the court's ruling that these two factors evidenced no meeting of the minds concerning the duration of plaintiff's employment, we would feel compelled to disapprove the entry of summary judgment.

It is well recognized that parties may become contractually obligated by their nonverbal conduct as well as by their use of oral or written words. *Rains v. Weiler*, 101 Kan. 294, 166 Pac. 235 (1917). A review of the record indicates sufficient testimony to raise a material question whether the conduct of the parties evidenced an implied employment agreement. Although such an agreement cannot be established solely by an employee's subjective understanding or expectation as to his employment, *Lasser v. Grunbaum Bros. Etc.*, 46 Wash. 2d 408, 413, 281 P.2d 832 (1955), a mutual intent to employ plaintiff as long as he did his job satisfactorily could be based upon such factors as the longevity of plaintiff's employment with defendant and defendant's predecessors, the nature of plaintiff's employment, plaintiff's rejoining the hospital at the hospital's request after having left to pursue his own private practice, plaintiff's curtailment of that private practice after returning to the hospital, and the excellent performance evaluations plaintiff received from defendant.

Although we express no opinion as to the merits of plaintiff's claim that there existed an implied contract of employment for a specific duration, we do find sufficient contentions of some evidentiary value on this issue to merit its submission to a jury.

Because we have determined that this case should proceed to trial, we find it unnecessary to examine in detail the remaining contentions of error raised by plaintiff. However, we do note that in proper circumstances an employee at will (*i.e.*, without a contract for a specific duration) may bring a tort action for *retaliatory discharge* when the termination is based on retaliation constituting a contravention of public policy. See *Viestenz v. Fleming Companies, Inc.*, 681 F.2d 699 (10th Cir.), *cert. denied* 459 U.S. 972 (1982); *Murphy v. City of Topeka*, 6 Kan. App. 2d

488. An action for wrongful discharge, as that term is generally used, alleges breach of an employment contract and, obviously, requires proof of the existence of such a contract.

Reversed and remanded.