Kathleen GOODWIN–HAULMARK,
Plaintiff,

v.

MENNINGER CLINIC,
INC., Defendant.

No. CIV. A. 98–2460–GTV.

United States District Court,
D. Kansas.

Dec. 7, 1999.

Glenn H. Griffeth, Anthony J. Kotich, Topeka, KS, for Kathleen Goodwin–Haulmark, plaintiff.

Marta Fisher Linenberger, Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Menninger Clinic, Inc., defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Chief Judge.

Plaintiff Kathleen Goodwin–Haulmark brings this action against defendant Menninger Clinic, Inc., alleging wrongful discharge, discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Kansas Acts Against Discrimination ("KAAD"), K.S.A. § 44–1001 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, interference in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, constructive discharge, and blacklisting in violation of K.S.A. § 44–117. Plaintiff con-

tends that defendant retaliated against her for contesting an unfavorable evaluation, and pressured her into resigning when she requested sick leave. The case is before the court on defendant's motion for summary judgment (Doc. 22). For the reasons set forth below, the motion is granted with respect to plaintiff's ADA and blacklisting claims and denied in all other respects.

## I. Factual Background

The following facts are either uncontroverted or are based on evidence submitted in summary judgment papers and viewed in a light most favorable to plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff was employed by defendant as a Nurse Manager from September 1995 to January 1998[1] at defendant's Providence facility. As part of her application, plaintiff signed an agreement acknowledging that "this application is not a contract for employment. I agree . . . that my employment and compensation can be terminated, with or without cause, and with or without notice, at any time at the option of either Menninger or myself." Defendant provided plaintiff with an employment handbook that provided for pregnancy or childbirth leave for female members, and leave to care for a new child or an ill relative. Neither the handbook excerpts nor any other materials submitted to the court mention sick leave or the FMLA. The handbook outlined procedures for termination and resignation. Defendant also had a progressive discipline policy that mandated a five-step disciplinary procedure beginning with an informal discussion and culminating in dismissal.

In July 1997, defendant issued plaintiff an evaluation that she considered unfairly negative. After consulting her employee handbook, plaintiff contacted the human resources department about the evaluation and was informed that the appropriate re-

course was to respond in writing to the evaluation. Plaintiff did so. Shortly afterward, plaintiff's supervisor and the director of nursing met with plaintiff to give her a "corrective action plan" in which they requested that she implement changes in several areas of her job.

That fall, plaintiff began experiencing health problems. In October, she was diagnosed with "cytomegalovirus" (CMV); plaintiff testified that CMV is a condition caused by stress that is somewhat similar to mononucleosis. Plaintiff testified that, throughout the second half of 1997, she experienced severe stress, depression, anxiety and insomnia as a result of additional responsibilities that her superiors had given her and what she considered unsupportive and undermining treatment by them.

On November 11, plaintiff approached her supervisor, Grant Edwards, to request a medical leave of absence. Plaintiff testified that she requested medical leave because of CMV, depression, anxiety, and insomnia due to defendant's objectionable treatment of her. According to plaintiff, Edwards told her that his supervisor had instructed him to respond, "if you give two weeks notice, he'll give you two weeks severance." Plaintiff testified that the next day, Edwards called her at home "pushing [her] to quit," and told her, "You can't just come back. . . . [my supervisor] will never go for that." On November 14, plaintiff phoned human resources representative Betty Wells; during that conversation, she requested medical leave. Plaintiff also faxed a formal request for medical leave to Wells, which included a note from her doctor. The doctor's note read, "Ms. Haulmark is ill. She will need to be under treatment and unable to work. She will be off from today till 12–8–97." On November 14, plaintiff sent a memorandum to Edwards and Wells stating that she was beginning a medical leave that day, and resigning effective January 8,

---

**1.** All events to which the court refers, except plaintiff's 1995 application, occurred during late 1997 or early 1998.

1998 (one month after she was scheduled to return from medical leave).

Around November 29, plaintiff sent a letter to Betty Wells. In her letter, she noted that she had received a letter from Grant Edwards stating that plaintiff verbally resigned on November 11; plaintiff disputed that she had voluntarily resigned and reiterated that, at the very least, she wanted to remain with defendant until January 8 in order to provide adequate notice. On December 3, plaintiff faxed to Wells another letter from her doctor saying that she needed an additional 2 or 3 weeks to recover and that he was referring her to a specialist.

In early January 1998, defendant appointed Sarah Hollerah as acting nurse manager. In a letter to the Providence facility staff informing them of the appointment, Grant Edwards noted that Hollerah would act as nurse manager for an extended period of time and that she would have the authority of a permanent person. Hollerah is younger than plaintiff. Several nurses at the facility objected to Hollerah's appointment because they considered her vastly underqualified, and immediately wrote a letter to Human Resources protesting the appointment. Defendant removed Hollerah within a week, replacing her with an administrator who is roughly the same age as plaintiff. Defendant paid plaintiff through January 8, 1998.

## II. Analysis

### A. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court must consider the record in the light most favorable to the nonmoving party. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

### B. Constructive Discharge

■ Although constructive discharge does not by itself constitute a cognizable claim, it is an element of both federal discrimination claims and state wrongful discharge claims. *See Mike v. Dymon, Inc.,* No. 95–2405–EEO, 1997 WL 38110, *4 (D.Kan. Jan.21, 1997). In order to demonstrate constructive discharge with respect to her federal discrimination claims, plaintiff must introduce evidence "sufficient to demonstrate that a reasonable person would have viewed her working conditions as intolerable." *Colter v. Dobski & Assocs., Inc.,* 35 F.Supp.2d 824, 831 (D.Kan.1999) (citing *Jeffries v. Kan-*

*sas,* 147 F.3d 1220, 1233 (10th Cir.1998)). *See also Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994) (applying standard in ADEA case); *Spillman v. Carter,* 918 F.Supp. 336, 342 (D.Kan.1996) (applying standard in ADA case); *Kidwell v. Board of County Comm'rs of Shawnee County,* 40 F.Supp.2d 1201 (D.Kan.1998) (permitting FMLA claim where plaintiff alleged constructive discharge). Kansas courts have neither permitted nor prohibited breach of employment contract claims where constructive discharge is alleged. This court has, however, allowed such claims to proceed in the past, and does so again today. *See Leopoldstadt, Inc. v. Fitzgerald,* No. 91–2419–GTV, 1992 WL 396330, at *5–6 (D.Kan. Dec. 22, 1992) ("Kansas would recognize a cause of action for breach of an employment contract due to constructive discharge.").

Plaintiff claims that defendant constructively discharged her by forcing her to resign when she requested medical leave. Indeed, the evidence presented could persuade a reasonable trier of fact that defendant forced plaintiff to resign or work without taking medical leave, and thus made plaintiff's working conditions intolerable. The court finds that a genuine issue of material fact exists as to whether defendant constructively discharged plaintiff, and denies summary judgment with respect to plaintiff's claim that she was constructively discharged.

### C. Wrongful Discharge

Plaintiff claims that defendant violated an implied-in-fact contract for employment by forcing her to resign in retaliation for objecting to her July 1997 evaluation and in order to prevent her from taking FMLA leave.

"In Kansas, whether an implied contract exists which creates a property interest in employment normally is a question of fact for the jury." *Koopman v. Water Dist. No. 1 of Johnson County, Kan.,* 972 F.2d 1160, 1164 (10th Cir.1992). *See also Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, 684

P.2d 1031, 1035 (1984) ("Determining whether an implied contract of employment exists requires a factual inquiry.... Intent is normally a question of fact for the jury...."); *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 537 (10th Cir. 1995) (citing *Kastner v. Blue Cross and Blue Shield of Kansas, Inc.,* 21 Kan. App.2d 16, 894 P.2d 909, 916 (1995) for the proposition that "summary judgment remains 'rarely appropriate' in implied contract cases because of the necessity of determining both parties' subjective intent to form a contract"). In Kansas, the existence of an implied-in-fact employment contract depends on a number of factors including

> written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Morriss v. Coleman Co., Inc.,* 241 Kan. 501, 738 P.2d 841, 849 (1987) (quoting *Allegri,* 684 P.2d at 1033). In support of its motion for summary judgment, defendant argues that plaintiff signed a letter during her application acknowledging that the employment relationship was terminable at will by either party. Many of defendant's other actions, however, suggest an implied-in-fact contract. Defendant operated under a five-step progressive discipline policy intended to "provide evidence that the stated reason for the action is the real reason and [to] establish[ ] a record of fairness" that specified detailed procedures for discipline and termination. Furthermore, defendant seemed to have an established process by which employees may dispute evaluations. Both policies may have suggested to plaintiff that she would not be disciplined or terminated without cause. Indeed, the existence of the procedures creates a genuine issue of material

**1240**

fact as to whether an implied-in-fact contract for employment requiring termination for cause existed between plaintiff and defendant. The court finds that a reasonable trier of fact, after evaluating all the evidence, could conclude that plaintiff was wrongfully discharged in violation of such a contract. The court denies defendant's motion for summary judgment with respect to plaintiff's wrongful discharge claim.

### D. ADA and KAAD

Plaintiff claims that defendant constructively discharged her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Kansas Act Against Discrimination, K.S.A. § 44–1001 *et seq.* The ADA prohibits discrimination in employment against qualified individuals with a disability. 42 U.S.C. § 12112(a). The Act defines a "qualified individual with a disability" as a person with (1) a "disability" who (2) can perform the essential functions of the employment position, with or without "reasonable accommodation." 42 U.S.C. § 12111(8). In order to survive summary judgment, plaintiff must demonstrate (1) that she is "disabled" within the meaning of the ADA; (2) that she is qualified, i.e. that she can perform the essential functions of the job with or without reasonable accommodation; and (3) that she suffered an adverse employment action based on her disability. *See Rice v. Wal-Mart Stores, Inc.*, 12 F.Supp.2d 1207, 1211 (D.Kan.1998) (citing *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1307–08 (10th Cir.1998)).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff claims that she is disabled either because her condition substantially limits her major life activity of working, or because defendant regarded her as having an impairment that substantially limited her major life activity of working. Although the ADA does not define "substantially limited," courts in the Tenth Circuit rely on EEOC regulations that define terms in the statute. *See MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1443 (10th Cir.1996). *See generally* 29 C.F.R. § 1630.1 *et seq.* The regulations dictate three factors that should be considered in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii). The regulations go on to define "substantially limited" with respect to the major life activity of working as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(3)(i).

The evidence presented suggests that the nature of plaintiff's impairment, while not frivolous, was neither severe nor permanent. Indeed, the evidence suggests that plaintiff anticipated recovering within a few weeks. Moreover, even if plaintiff was permanently and severely impaired, she has presented no evidence to suggest that she was restricted in the ability to perform a class of jobs or a broad range of jobs. Critically, except for plaintiff's CMV diagnosis, her reasons for requesting the leave (depression, anxiety and insomnia) seem to be specific to her position—and the regulations specifically exclude "the inability to perform a single, particular job." Plaintiff has not created a genuine issue of material fact as to whether she was substantially limited in her major life activity of working. *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943 (10th Cir.1994) (affirming summary judgment where plaintiff presented no evidence that he was

restricted from a broad range or class of jobs).

Plaintiff argues that, even if she is not substantially limited in her major life activity of working, defendant regarded her as substantially limited. Plaintiff has presented no evidence, however, to suggest that defendant considered her significantly restricted in the ability to perform a class of jobs or a broad range of jobs, or even that defendant considered plaintiff unable to perform her specific job. A trier of fact might conclude that defendant retaliated against plaintiff for contesting her evaluation or for requesting medical leave; given the evidence presented, however, no reasonable trier of fact could conclude that defendant regarded plaintiff as disabled within the meaning of the ADA and its regulations. The court grants defendant's summary judgment with respect to plaintiff's ADA and KAAD claims.[2]

### E. FMLA

Plaintiff claims that defendant violated her FMLA rights by failing to notify her of her rights and by forcing her to choose between resigning and working without leave. The Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, provides eligible employees up to 12 weeks of leave during any 12–month period so that they may care for a relative, welcome a new child, or "because of a serious health condition." 29 U.S.C. § 2612(a)(1)(A)-(D). The FMLA makes it unlawful for employers to "interfere with, restrain, or deny the exercise of" such rights, or to "discharge or in any other manner discriminate against" individuals who oppose such interference. 29 U.S.C. § 2615(a)(1)-(2). Regulations promulgated by the Department of Labor require that, when the employee intends to take FMLA leave, the employee shall notify the employer "as soon as practicable." 29 C.F.R. § 825.302(a). *See Mardis v. Central Nat'l Bank & Trust of Enid,* 173 F.3d 864, 1999 WL 218903, *2

(10th Cir. Apr.15, 1999) (according deference to FMLA regulations); *Holmes v. Boeing Co.,* 166 F.3d 1221, 1999 WL 9760, *3 (10th Cir. Jan.12, 1999) (same). The regulations further specify that

> [the] employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.

29 C.F.R. § 825.302(c). At that point, the burden shifts to the employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c). Section 825.220(b) of the regulations provides that "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act," and thus constitute a section 2615(a) violation.

■ In order to present a prima facie case for FMLA interference, plaintiff must show that she is entitled to FMLA leave and that her employer interfered with, restrained, or denied the exercise of her rights under the Act. *See Mardis,* 173 F.3d 864, 1999 WL 218903 at *2 (citing *Dawson v. Leewood Nursing Home, Inc.,* 14 F.Supp.2d 828, 832 (E.D.Va.1998)).

■ Under section 2612(a)(1)(D) of the FMLA, an employee is entitled to FMLA leave if the employee suffers from a "serious health condition that makes the employee unable to perform the functions of [her] position." The regulations define "serious health condition" as an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider. 29 C.F.R.

---

**2.** Because the ADA and the KAAD define the term "disability" similarly, plaintiff's claims under the KAAD must also fail. *See Nolan v.*

*Sunshine Biscuits, Inc.,* 917 F.Supp. 753, 757 (D.Kan.1996); *South v. NMC Homecare, Inc.,* 943 F.Supp. 1336, 1340 (D.Kan.1996).

§ 825.114(a)(2). Such treatment includes a period of incapacity (i.e., inability to work) of more than three consecutive calendar days which also involves either treatment two or more times by a health care provider or a regimen of continuing treatment by a health care provider. *Id.* at § 825.114(a)(2)(i)(A)-(B). The court holds that the doctor's note provided by plaintiff stating that she would be under treatment for several weeks and unable to work, creates a genuine issue of material fact as to whether plaintiff was entitled to FMLA leave due to a serious health condition.

Moreover, plaintiff has presented evidence from which a trier of fact could conclude that defendant interfered with her FMLA rights in several ways. First, when plaintiff notified her supervisor and a human resources representative that she wished to take medical leave, and delivered a written request for medical leave with a doctor's note, defendant was required by the Act either to inquire further about plaintiff's condition, to grant the leave, or to request further certification. Its failure to do any of these things constitutes an FMLA violation. *See* 29 C.F.R. § 825.302(b). Second, defendant failed to comply with the provisions of the FMLA and its regulations which require employers to post a notice summarizing employees' FMLA rights and to include a summary of employees' FMLA rights in its employee handbook. *See* 29 U.S.C. § 2619; 29 C.F.R. § 825.301(a)(1). Third, by forcing plaintiff to choose between resignation and working without leave, defendant interfered with plaintiff's rights by "discouraging an employee from using [FMLA] leave." 29 C.F.R. § 825.220(b). *See Mardis,* 173 F.3d 864, 1999 WL 218903 at *2 (holding that, when an employer's actions provide a strong disincentive against an employee taking FMLA leave, the employer violates the FMLA).

Defendant argues only that plaintiff was not entitled to FMLA leave because she did not suffer from a serious health condition. However, plaintiff has presented evidence sufficient to create a genuine issue of material fact as to whether or not she did. In addition, a reasonable trier of fact could conclude from the evidence presented that defendant interfered with plaintiff's FMLA rights. The court denies defendant's motion for summary judgment with respect to plaintiff's FMLA claim.

### F. ADEA

Plaintiff claims that defendant constructively discharged her in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The ADEA makes it "unlawful for an employer to ... discharge any individual or otherwise discriminate against any individual ... because of such individual's age." ADEA § 623(a)(1). To survive summary judgment, plaintiff may either "establish that age was a 'determining factor' in the employer's challenged decision" or establish a prima facie case based on the *McDonnell Douglas*[3] burden-shifting scheme. *See Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 557 (10th Cir.1996) (citing *Lucas v. Dover,* 857 F.2d 1397, 1400 (10th Cir. 1988)); *Flanders v. Enron Corp.,* 49 F.Supp.2d 1276, 1280 (D.Kan.1999). In order to present a prima facie case, plaintiff must demonstrate that she was within the protected age group, that she was doing satisfactory work, that she was discharged despite the adequacy of her work, and that a younger person replaced her. *Id.* Plaintiff was 45 when she left her employment with defendant, well within the age requirement. *See* 29 U.S.C. § 631. She testified that she was performing adequately, and that she was constructively discharged despite the adequacy of her work. Plaintiff also supplied an affidavit from one of defendant's employees, Trish Bowyer, attesting to the quality of plaintiff's work.

---

**3.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Finally, defendant replaced plaintiff with Sarah Hollerah, who is younger than plaintiff. Plaintiff has presented a prima facie case.

■ Under the *McDonnell Douglas* framework, defendant must offer a legitimate, nondiscriminatory justification for its action, and plaintiff must produce evidence suggesting that the reason is pretextual. Plaintiff may do so by suggesting "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997). Defendant has not offered a legitimate, nondiscriminatory reason for its action. Rather, defendant argues only that plaintiff has not presented a prima facie case. The court disagrees. Plaintiff has presented evidence sufficient to create a genuine issue of material fact as to whether she was constructively discharged, whether her performance was satisfactory, and whether she was replaced by a younger staff member. The court denies defendant's motion for summary judgment with respect to plaintiff's ADEA claim.

### G. Blacklisting

Plaintiff has abandoned her blacklisting claim. The court grants summary judgment with respect to plaintiff's blacklisting claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment is granted with respect to plaintiff's ADA and blacklisting claims, and denied in all other respects.

**IT IS SO ORDERED.**