**Jess MAUS, Plaintiff,**

v.

**CITY OF TOWANDA, KANSAS, Defendant.**

No. 991382–JTM.

United States District Court, D. Kansas.

Sept. 6, 2001.

1224

Kurt A. Harper, Sherwood & Harper, Wichita, KS, for plaintiff.

Alan L. Rupe, Georgina R. Adami, Husch & Eppenberger, LLC, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

This matter comes before the court on defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. The motion is fully briefed and ripe for determination. For the reasons set forth below, the court grants defendant's motion.

### I. Factual Background

Plaintiff, Jess Maus, was employed as a patrol officer with the City of Towanda Police Department from September 1998 through July 1999. Plaintiff reported to Kurt Spivey, Chief of Police for the city of Towanda Police Department. During plaintiff's employment with the City of Towanda ("City"), Ed Rando was Mayor.

After plaintiff began working for the City, it gave him a copy of the Personnel Policies and Guidelines handbook. The handbook stated, **"All employees are considered to be at-will employees for the purposes of city employment."** Personnel Policies And Guidelines, City Of Towanda, Kansas, at p. 1 (emphasis in original). Plaintiff did not negotiate any of the policy's terms nor their applicability to him. Maus Deposition, at p. 101–02.

During the course of plaintiff's employment, he alleges that the City maintained a hostile work environment. On July 4, 1999, he sent a letter to Kurt Spivey, requesting a meeting with the Mayor concerning the hostile work environment. The claim arises from allegations that 1) Mayor Rando used a harsh voice when speaking to plaintiff (Maus Deposition, at p. 140); 2) Rando took a part of a newspaper away from plaintiff in a public place knowing plaintiff was handicapped (*Id.*); 3)

Rando shined his headlights on plaintiff while plaintiff was on duty (*Id.*); and 4) Rando disobeyed traffic laws allegedly knowing plaintiff could not take any enforcement action against him (*Id.*). When Spivey received the letter, the City Council had already scheduled a meeting at which City employees could voice their employment complaints. Spivey Deposition, at p. 24. Believing that plaintiff's complaints would be heard at the meeting, Spivey discarded the letter. Prior to plaintiff's termination, Mayor Rando and the City Council had no knowledge that plaintiff requested a meeting to discuss a hostile work environment.

The City Council of Towanda held a regular session at 7:00 p.m. on July 14, 1999. In an executive session of the Council, members met with Mayor Rando to discuss personnel issues. Mr. Giles, a Council member made a motion to terminate plaintiff following the executive session. The motion passed, terminating plaintiff. Mayor Rando did not participate in the vote.

While employed, the City allowed plaintiff to take unpaid thirty-minute meal breaks within the Towanda City limits, with the restriction that he was available to answer phone calls. During his employment, plaintiff took meal breaks at home 20 to 25 percent of the time; took meal breaks at a restaurant 40 to 50 percent of the time; and took meal breaks in his car 35 to 40 percent of the time. Maus Deposition, at p. 128. Plaintiff ceased his duties to take a meal break 95 to 98 percent of the time. *Id.* at p. 129. Ten percent of this time was interrupted by work duties. *Id.* Therefore, plaintiff claims $1687.50 for unpaid lunch time.

Plaintiff also attended training during his employment with the City. When attending training courses, the City required plaintiff to record his time in order to receive payment. Maus Deposition, at p. 118. The City did not have a reimbursement policy for training expenses, but plaintiff contends that the City regularly reimbursed employees for these expenses. Maus Deposition, at p. 111–12. Plaintiff claims that he is entitled to damages in the amount of $600 for training time that was not recorded and $350 for mileage reimbursement.

## II. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations

or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Analysis and Discussion

*Breach of Implied Contract and Procedural Due Process Violation:*

Plaintiff argues that an implied contract arose during his employment with the City. He bases this claim on the procedures set forth in the Personnel Policies, stating that employees shall have notice and a hearing when misconduct is alleged. The court finds that Maus was an at-will employee. Given that status, he is not entitled to relief for breach of an implied contract.

 Under Kansas law, employment is at the will of the employer and employee. The general rule is that employment is terminable at the will of either party in the absence of an express or implied contract. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976). Therefore, the employee has no cause of action for breach of contract by alleging discharge. *Id.* An employee may be discharged "for good cause, for no cause, or even for a wrong cause, without incurring liability to the employee for wrongful discharge." *Brown v. United Methodist Homes For The Aged,* 249 Kan. 124, 134, 815 P.2d 72 (1991) (quoting *Morriss v. Coleman Co.,* 241 Kan. 501, 508, 738 P.2d 841 (1987)).

 As noted in *Johnson,* an implied contract creates an exception to the at-will employment rule. Under an implied contract theory, the contract for employment is read broadly so that the employer cannot terminate an employee arbitrarily where a policy or program of the employer restricts at-will termination. *Morriss,* 241

Kan. at 509, 738 P.2d 841. In *Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, 684 P.2d 1031 (1984), a case plaintiff cites, the Kansas Court of Appeals found that an implied contract existed and reversed the district court's decision granting summary judgment for the defendant. The plaintiff did not rely on the existence of the handbook, instead, he emphasized communications and discussions with his supervisor. *Id.* Thereafter, the Kansas Supreme Court in *Morriss* relied on *Allegri* to note that the existence of an implied contract is determined by a number of factors. It stated:

'Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.'

241 Kan. at 513, 738 P.2d 841 (quoting *Allegri,* 9 Kan.App.2d at Syllabus ¶5, 684 P.2d 1031). While summary judgment is "rarely appropriate" where state of mind is an issue, it may be appropriate in some situations. " 'Although the existence of an implied contract of employment is normally a question of fact for the jury, ... and almost always inappropriate for summary judgment resolution, ... summary judgment may be granted if the plaintiff presents only evidence of his own unilateral expectations of continued employment.' " *Kastner v. Blue Cross and Blue Shield of Kansas, Inc.,* 21 Kan.App.2d 16, 23, 894

P.2d 909 (1995) (quoting *Conyers v. Safelite Glass Corp.*, 825 F.Supp. 974, 977 (D.Kan.1993)).

■ According to plaintiff, he believes that an employment contract existed with the City due to pay stubs and canceled checks he received; a Wichita Eagle newspaper article announcing his employment; the City Council's announcement of plaintiff's employment; public introduction as the new police officer; an arrest plaintiff made; tickets written by plaintiff; and the City's personnel policies. Plaintiff's Answers To Defendant's First Set of Interrogatories, at p. 10. Plaintiff specifically argues that the City's common practices in the termination context and its personnel manual demonstrate an implied employment contract.

■ In order to withstand summary judgment, plaintiff must show a mutual understanding that the employer would terminate the employee "for cause." First, plaintiff asserts that the City had a common practice to terminate employees only "for cause." However, beyond stating that it is the common practice of defendant to terminate "for cause," plaintiff does not provide examples of this practice. Plaintiff next asserts that defendant could not terminate plaintiff without cause due to the disciplinary procedure outlined in the personnel manual. However, the personnel policy expressly states, "These policies and guidelines do not create contractual employment rights. **All employees are considered to be at-will employees for the purpose of city employment.**" Personnel Policies And Guidelines, at p. 1 (emphasis in original). The manual expressly disclaims an intent to create contractual rights through its policies and provides that employees are at-will. Due to this explicit language, the court finds that the manual does not, in itself, give rise to any contractual rights on the part of plaintiff. *See Emerson v. The Boeing Compa-*

*ny*, 1994 WL 149191 (D.Kan.1994). Plaintiff's evidence of an implied contract only serves to establish his own unilateral expectations. Accordingly, the plaintiff cannot establish the existence of an employment contract nor violation of procedural due process which would require a protectable property interest in continued employment with the City.

*Retaliation Claim:*

■ Although plaintiff believes that the City discharged him in response to the complaint he filed with Spivey, he fails to state a prima facie retaliatory discharge claim.

■ In *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988), the Kansas Supreme Court recognized "whistle-blowing" as an exception to at-will employment. Under *Palmer*, retaliatory discharge is an actionable tort where 1) a plaintiff proves by clear and convincing evidence that a reasonably prudent person would find that an employee's co-worker or employer was engaged in violation of rules, regulations, or the law pertaining to the public health, safety, and the general welfare; 2) the employer had knowledge of the employee's reporting of such violation prior to discharge; and 3) the employee was discharged in retaliation of making the report. 242 Kan. at 900, 752 P.2d 685 (1988). The clear and convincing standard is not a measure of quantity, but quality of evidence. *Ortega v. IBP, Inc.*, 255 Kan. 513, 528, 874 P.2d 1188 (1994). "It is clear if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it." *Id.* (quoting *Chandler v. Central Oil Corp.*, 253 Kan. 50, 58, 853 P.2d 649 (1993)).

■ First, applying Kansas law, the court finds that plaintiff raises a triable issue as to whether his employer engaged

in a violation of the law pertaining to the public health, safety, and the general welfare. In *Pilcher v. Board of County Com'rs of Wyandotte County,* 14 Kan. App.2d 206, 787 P.2d 1204 (1990), the Kansas Court of Appeals granted remand for a plaintiff who alleged she was discharged for reporting the unlawful actions of her employer. Under this standard, this court finds that an abuse of position to violate laws and interfere with police exercise of duties would have a detrimental impact on the general welfare.

However, plaintiff fails to demonstrate that the City knew of his complaint. Plaintiff submitted a note to Spivey stating, "This letter is to request a meeting with you and the city administrator and the mayor if he is the one who is running this city, concerning the hostile work environment." Spivey Exhibit No. 2. Upon receipt, Spivey disposed of the note due to the upcoming employment meeting for City employees and City Council members. Neither the Mayor nor the City Council knew that plaintiff submitted a formal complaint to Spivey. Plaintiff's Response, Uncontroverted Fact # 14. Thus, the relevant employer in this case had no knowledge of plaintiff's whistle-blowing activities.

Finally, given the court's preceding finding, plaintiff cannot establish a causal connection. Plaintiff must establish that his termination was in retaliation for his whistle-blowing activities. As noted above, plaintiff fails to demonstrate management's knowledge of his complaints and thus he cannot establish the required causal linkage.

*FLSA Claim:*

Plaintiff claims that the City failed to properly compensate him for meal breaks, vacation time, and training. These claims are meritless.

■ The U.S. Department of Labor enacted the following provision for employees' meal periods:

(a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are not rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily, 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved from duty if he is required to perform duties, whether active or inactive, while eating...

(b) Where no permission to leave premises. It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19. In applying this regulation, the 10th Circuit adopted a "predominant benefit test" for meal breaks. *See Armitage v. City of Emporia,* 982 F.2d 430 (10th Cir.1992). In that case, the circuit reversed the district court's award of backpay for meal breaks, stating that the district court applied the wrong standard by using the "completely relieved of duty" test. *Id.* at 431. It held that *Lamon v. City of Shawnee,* 972 F.2d 1145 (10th Cir. 1992), utilized the proper standard for analyzing meal periods under the FLSA. *Id.* at 432. In *Lamon,* the court stated that although an officer may have limited responsibilities during a lunch hour, this does not perforce mean that the officer is working. *Id.* (quoting *Lamon,* at 1157) (citing *Lee v. Coahoma County, Mississippi,* 937 F.2d 220, 225 (5th Cir.1991)). The correct standard is whether the officer is "primarily engaged in work-related duties during meal periods." *Armitage,* 982 F.2d at 432 (quoting *Lamon,* at 1157).

■ By applying the predominant benefit test, the court finds that plaintiff is not entitled to compensation for meal breaks. Although the City required plaintiff to remain within the city limits and listen to citizen complaints during meal breaks, plaintiff testified that he took a break from his duties 95 to 98 percent of the time. When plaintiff's duties required him to cease his break, plaintiff should have recorded the time with the City in order to be paid. It is uncontroverted that the City told plaintiff to accurately record his time and then paid plaintiff for the time spent working. Therefore, the court finds no merit in plaintiff's uncompensated meal break claim.

The court similarly finds that plaintiff is not entitled to compensation for untaken vacation time and training time. Plaintiff argues that he is entitled to compensation for 4.3 days of untaken vacation time accrued during his 315 days of employment. Likewise, plaintiff contends that he was not paid for training required by the City.

■ The Personnel Policies and Guidelines handbook for the City states that "Full-time employees are entitled to paid vacation leave time according to the following schedule; provided, no paid vacation leave time may be taken during the first year of employment." Personnel Policies, at p. 6. The schedule provides two columns, "Years of Continuous Employment" and "Work Days Earned." *Id.* Under the schedule, one year of work equates to 5 work days of paid vacation time. Plaintiff only worked 315 days, thus, he is not entitled to compensation for untaken vacation. Plaintiff states that the handbook does not provide that an employee terminated prior to one year of full employment should be denied compensation for the vacation leave earned. However, the court finds that the schedule clearly provides that after one year of continuous employment, 5 vacation days

are earned; therefore, plaintiff is not entitled to compensation for 4.3 days simply because he worked 315 days.

In addition, plaintiff argues that he was not paid for required training time. The City provided plaintiff's compensation records, which show training time recorded and paid. Upon examination, the court finds that the City paid plaintiff for all properly recorded training time. It is not the City's responsibility to ensure that its employees properly record their training time. It is enough that the City instructed its employees as to the procedure for receiving such compensation. The court thus denies plaintiff's claim relating to compensation for unrecorded training time.

IT IS THEREFORE ORDERED this _____ day of September, 2001 that defendant's motion for summary judgment (dkt. no. 36) is GRANTED.